**NATIONAL DIVERSIFIED BUSINESS SERVICES, INC., Plaintiff–Appellant,**

**v.**

**CORPORATE FINANCIAL OPPORTUNITIES, INC., Bill D. Burnett, and Bob Bell, Defendants–Appellees.**

No. 84,331.

Supreme Court of Oklahoma.

April 1, 1997.

Rehearing Denied Sept. 17, 1997.

---

John B. Davis, John B. Davis, P.C., Metheny, Mitchell, Davis & Klein, Oklahoma City, for Appellant.

Herman D. Brandon, Oklahoma City, for Appellees.

OPALA, Justice.

The dispositive issue on certiorari is whether the earlier dismissal without prejudice (*National I* )[1] operates as a *bar against relitigation* of the forum-selection issue that is pressed in the present case (*National II* )? We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

Corporate Financial Opportunities, Inc. [CFO or Texas company] is a business incorporated under the laws of the State of Texas. In January 1991 CFO published an advertisement in an Oklahoma newspaper, which contained a solicitation for inquiries regarding financial brokerage opportunities. When National Diversified Business Services, Inc. [National or Oklahoma company], an entity incorporated under the laws of Oklahoma, responded to the ad, CFO's agents made representations of CFO's ability to provide access to numerous lenders and informational databases.

CFO and National entered into a written contract (entitled broker agreement), dated February 22, 1991, by which CFO agreed to furnish National with services, information, and materials for the establishment of a brokerage business. The contract includes a forum-selection clause[2] that requires the

1. National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc., No. CJ 91–5031, District Court, Oklahoma County [*National I* ].

2. The pertinent terms of the forum-selection clause are:

   "I understand and agree that this Agreement is not valid or binding unless signed by an authorized representative of CFO at its headquarters

parties to litigate in a Texas forum *any dispute arising from their agreement.*

### National I Litigation

National brought suit in Oklahoma against CFO in 1991, alleging (a) breach of contract, (b) fraud in the inducement, and (c) fraud.[3] CFO moved to dismiss for (a) lack of *in personam* jurisdiction, (b) mislaid venue, and (c) failure to state a claim upon which relief can be granted. On *September 11, 1991* the trial court dismissed the claim without prejudice to its refiling in a Texas forum.[4] The dismissal was explicitly grounded on the contract's forum-selection clause. *No appeal was taken from that decision.*

### National II Litigation

On September 8, 1993 National *brought the present suit* against CFO and two of its agents. By changing its theory of recovery from a contractual to a noncontractual basis (violations of the Oklahoma Business Opportunity Sales Act [OBOSA or Act]),[5] National

now seeks to escape the prior decision's preclusive effect. The *earlier* suit was rested on the contractual character of the claim. The *present* petition, although abandoning the theories urged in *National I* (*i.e.*, fraud, fraud in the inducement, and breach of contract), *alleges* many of *the same facts* and seeks the same relief as that pressed in the first suit.[6]

CFO moved to dismiss on the ground that the petition fails to state a claim upon which relief may be granted. According to CFO, the *first (September 11)* dismissal order bars the *second* suit by interposition of *res judicata* (claim preclusion). The earlier dismissal order is binding on the parties, CFO urged, because (a) National did not appeal from that ruling and (b) the present (*National II*) litigation is based on the same facts and transactions as those in the first suit.[7]

National's response urged that (a) CFO's motion to dismiss is but a quest for summary relief because CFO was relying on facts not found in the petition,[8] (b) the second suit,

in Irving, Texas; and this Agreement is a Texas contract governed by the laws of Texas; and *any dispute arising from this agreement shall be brought only in the courts of the State of Texas."* (Emphasis added.)

3. National alleges that CFO (a) breached its contract when it failed to provide reliable lender data in conformity with the written agreement, (b) made material misrepresentations for the purpose of inducing National to enter into the written brokerage agreement and (c) perpetrated fraud against National. *National I, supra* note 1.

4. The trial court's earlier dismissal (filed *September 11, 1991* in National I) states in pertinent part:

"Upon consideration of the briefs, arguments of counsel and the relevant law, the Court finds that defendant's Motion to Dismiss should be sustained. The *choice of forum clause contained in the agreement is controlling;* therefore, the proper venue would lie in the Texas Courts.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss is sustained.

IT IS FURTHER ORDERED that plaintiff's petition is hereby dismissed but *without prejudice to be refiled in a proper tribunal.* * * * " (Emphasis added.)

5. 71 O.S.1991 §§ 801 et seq. National alleges that (a) CFO's actions constituted an offer or sale of a business opportunity under the terms of the OBOSA; (b) the business opportunity sold (or offered) by CFO was not registered nor did it

qualify for an exemption under the Act's provisions; (c) CFO did not file a written disclosure statement pertaining to the offer or sale of the business opportunity; (d) the parties' contract failed to include provisions required by the Act; (e) contrary to the Act, CFO did not have a minimum net worth of $50,000 at the time of its offer or sale of the business opportunity; and (f) CFO's actions and those of its agents constitute fraud or deceit in connection with the offer or sale of the business opportunity in violation of the Act.

6. The petitions in *National I* and *II* allege, *inter alia*, that (a) CFO made false representations about its access to 2,000 suitable lenders, (b) in reliance on these representations, National entered into a written contract with CFO, (c) National paid CFO the contract price of $8,981, and (d) CFO failed to furnish reliable lender data under the agreement's terms, which resulted in lost profits to National, exceeding $10,000. Both petitions seek (a) damages in the amount of $8,981, (b) damages for lost profits in excess of $10,000, (c) punitive damages in excess of $10,000 for the defendants' fraudulent and malicious conduct, and (d) the costs of the action.

7. For the *National I* and *II* allegations, see supra note 6.

8. CFO attached to its motion copies of the following papers: (a) the petition in the 1991 action (*National I*); (b) the parties' contract (broker

which is based entirely on the OBOSA, sufficiently distinguishes the claim (in *National II* ) from the first action to avoid a *res judicata* bar, and (c) as a result of extensive litigation between the Oklahoma Department of Securities and CFO, the latter entity is under a permanent cease and desist order.[9] According to National, the *September 11* dismissal was rested on a forum-selection clause the parties intended to apply solely to *ex contractu* claims (or suits). National also urged that it did not relinquish its right to pursue in an Oklahoma forum statutory violations of this State's law.

The trial court *dismissed* the second suit, resting its decision on the earlier (*September 11* ) adverse (to National) adjudication of the forum-selection clause.[10] The Court of Civil Appeals *reversed,* holding that the prior dismissal order does not bar National's later OBOSA-based action in Oklahoma. The appellate court reasoned that (a) because the dismissal of an action for mislaid venue is not a decision on the merits, the first dismissal

did not have preclusive effect under the doctrine of "*res judicata* or [of] collateral estoppel," (b) National could not relitigate any fact or law issue settled by the first dismissal,[11] (c) a forum-selection clause in a contract does not prevent a court from exercising its jurisdiction,[12] (d) the dismissal of the first suit did not become the "law of the case" since there was no appellate pronouncement upon the correctness of the trial court's ruling, and (e) a forum-selection clause, which would require that suit to enforce a statutory civil remedy must be brought in another state, is unenforceable on public policy grounds.

## II

### THE STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted may not be sustained unless it should appear *without doubt* that the plaintiff can prove no set of facts in support of the stated claim for relief.[13] Under this State's pleading re-

agreement) and (c) CFO'S motion to dismiss (and brief) in the first action together with the attached exhibits (affidavit of CFO's president and the *September 11, 1991* dismissal order).

9. The Oklahoma Securities Commission's order—whose terms found that the transaction here in contest is within that agency's jurisdiction under OBOSA and that the parties' contract is governed by that Act (OBOSA)—was later affirmed on appeal. *In the Matter of Corporate Financial Opportunities, Inc. v. Oklahoma Department of Securities* (Sup.Ct. No. 80,115, July 27, 1993, unpublished opinion by the Court of Civil Appeals).

10. The second dismissal order (filed *July 14, 1994* in *National II* ) states in pertinent part:

" * * * This cause comes before the court upon defendants' motion to dismiss for failure to state a claim, filed April 13, 1994. The Court finds that Defendants' Motion to Dismiss should be sustained upon the grounds that Plaintiff's claim is barred by prior adjudication. * * * "

11. The appellate court cites *Swan v. Sargent Industries,* Okl.App., 620 .P.2d 473 (1980) (approved for publication by the Supreme Court), which holds that an *earlier dismissal* for want of personal jurisdiction over the defendant does not preclude a *later litigation* over the merits before a court of competent jurisdiction, although it does bar a retender upon the same issue of *in personam* jurisdiction.

12. In support of this principle, the appellate court cites *Eads v. Woodmen of the World Life Insurance Society,* Okl.App., 785 P.2d 328 (1990), which holds that forum-selection clauses, while not *per se* invalid, may be unenforceable if found unfair or unreasonable.

13. The terms of 12 O.S.1991 § 2012(B) provide in pertinent part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

* * * * * *

6. *Failure to state a claim upon which relief can be granted;*

* * * * * *

If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment. * * * " (Emphasis added).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond

gime,[14] if the dismissal motion also tenders for consideration materials *dehors* the pleadings, summary process must be utilized.[15] Since evidentiary materials were indeed presented for nisi prius consideration,[16] CFO's quest for dismissal must be treated as though it were one for summary adjudication. A motion for summary disposition submits the controversy to the court for application of the pertinent law to uncontroverted facts. *The tendered evidentiary materials will warrant summary relief if all material facts are undisputed and supportive of but a single inference that favors the movant.*[17] For the reasons to be stated, we hold, on *de novo* review of the record, that the trial court's summary ruling for CFO is free from error.[18]

## III

## SINCE *NATIONAL II* IS PREDICATED ON A RELATIONSHIP CREATED BY AND THEREFORE *ARISING OUT OF* THE UNDERLYING CONTRACT, IT FALLS WITHIN THE OUTER RANGE OF ISSUE PRECLUSION

### A.

### *The Relitigation Bar*

CFO's quest for dismissal at nisi prius was rested on a *claim-preclusion* bar, but we conclude that *issue preclusion* is the correct concept that governs here.

Under the doctrine of issue preclusion (formerly known as collateral estoppel),[19] once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim.[20] Although the principle of issue preclusion operates to bar from relitigation both correct and erroneous resolutions of jurisdictional and nonjurisdictional challenges,[21] the doc-

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568 n. 15, 107 S.Ct. 1410, 1417 n. 15, 94 L.Ed.2d 563 (1987); *Groce v. Foster*, Okl., 880 P.2d 902, 906 (1994); *Dyke v. Saint Francis Hospital, Inc.*, Okl., 861 P.2d 295, 298–299 (1993); *Frazier v. Bryan Memorial Hosp. Authority*, Okl., 775 P.2d 281, 289 (1989). *See also* Committee Comment to 12 O.S.1991 § 2012(B), which observes that § 2012(B) is virtually the same as Federal Rule of Civil Procedure 12(b).

**14.** The Oklahoma Pleading Code, 12 O.S.1991 §§ 2001 et seq.

**15.** 12 O.S.1991 § 2012(B), *supra* note 13. *See Dyke, supra* note 13 at 299 n. 8; *Norman v. Trison*, Okl., 832 P.2d 6, 8 (1992); *Hulsey v. Mid–America Preferred Ins. Co.*, Okl., 777 P.2d 932, 932 n. 14 (1989); *Silver v. Slusher*, Okl., 770 P.2d 878, 881 n. 8 (1988).

**16.** For the evidentiary materials attached to CFO's motion to dismiss, see *supra* note 8.

**17.** *Hulsey, supra* note 15 at 936 n. 15.

**18.** An order that grants summary relief disposes only of questions of law. It is reviewable *de novo*. An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority*, Okl., 859 P.2d 1081, 1083 (1993). Oklahoma's summary judg-

ment process is similar to that followed by the federal judicial system. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**19.** *Fent v. ONG*, Okl., 898 P.2d 126, 133 (1995). Issue preclusion and collateral estoppel are two different names for the same legal doctrine. The former term was introduced through the Restatement and the seminal writings by Prof. Allen Vestal, Res Judicata/Preclusion, Personal Injury Annual (1969); Res Judicata/Preclusion: Expansion, 47 S.Cal.L.Rev. 357 (1974); State Court Judgment as Preclusive in Section 1983 Litigation In A Federal Court, 27 Okla.L.Rev. 185, 202 (1974). The latter is a common-law term of long usage. RESTATEMENT OF JUDGMENTS (SECOND) § 27, Comment b; *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 n. 8 (1982); *Veiser v. Armstrong*, Okl., 688 P.2d 796, 799 n. 7 (1984).

**20.** *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980); *Underside, supra* note 19 at 516–517; *Chambers v. City of Ada*, Okl., 894 P.2d 1068, 1072 n. 5 (1995); *Wilson v. Kane*, Okl., 852 P.2d 717, 722 n. 23 (1993); *Veiser, supra* note 19 at 800. *See also Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272 (10th Cir.1995).

**21.** *Swan, supra* note 11 at 477; *White v. White*, Okl., 607 P.2d 700, 702 (1980) (Opala, J., concurring in result); *Duncan v. Seay*, Okl., 553 P.2d 492, 494 (1976); *Bruce v. Miller*, Okl., 360 P.2d 508, 511 (1961).

trine may not be invoked if the party against whom the earlier decision is interposed did not have a "full and fair opportunity" to litigate the critical issue in the previous case.[22] The law affords no more than *a single opportunity* to litigate a disputed question of a tribunal's jurisdiction.[23]

The issue-preclusion bar is distinct from that of claim preclusion (formerly known as *res judicata* ). Under the latter principle, *a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim but also any theories or issues that were actually decided, or could have been decided, in that action.*[24]

The first lawsuit came in the framework of a cause of action different from the statutory claim that is now asserted in this case. For invocation of issue preclusion, there need not be a *judgment on the merits* (as it is often the case with *res judicata* ), but only a *final determination* of a material issue (common to both cases).[25] An order is *final* within the meaning of 12 O.S.1991 § 953 [26] if it prevents judgment upon the process in progress, even though the aggrieved party would have been free to abandon the course then in pursuit to relaunch or press the same claim along a different remedial track. The September 11

dismissal clearly meets the standards of a final and appealable order.[27]

The *first* (September 11, 1991) dismissal, based on an adjudication upon the tendered forum-selection clause, determined a single issue *dehors* the merits. It decided no issues upon the claim or defenses pressed in *National I.*[28] The sole remedy for correcting that determination was by appeal. Absent such appeal, the ruling became *final* in the issue-preclusion sense. Its terms are conclusive insofar as they declare that (a) Oklahoma is not an available forum to litigate rights derived from the parties' contract in which the forum-selection clause is found and (b) litigation of those rights may be conducted in a Texas forum.

**B.**

***The Forum–Selection Issue That Stands Precluded By National I is Co–Extensive With The National II Controversy That Owes Its Origin To The Contractual Relationship Between The Parties***

National rests its second lawsuit on violations of the statutory (OBOSA) requirements

**22.** *Fent, supra* note 19 at 133; *Underside, supra* note 19 at 516; *Veiser, supra* note 19 at 800.

**23.** A litigant who is deemed aggrieved by a jurisdictionally defective decision is allowed but a single "whack" (attack) at any facially void target. *Stites v. DUIT Constr. Co.,* Okl., 903 P.2d 293, 298 n. 13 (1995); *Salyer v. National Trailer Convoy, Inc.,* Okl., 727 P.2d 1361, 1363 (1986); *Depuy v. Hoeme,* Okl., 775 P.2d 1339, 1345 (1989); *White, supra* note 21 at 703 (Opala, J., concurring in result); *Bruce, supra* note 21 at 511–512; *Tippins v. Turben,* 162 Okl. 136, 19 P.2d 605, 608 (syl. 4) (1933); *Brett v. Fielder,* 136 Okl. 222, 277 P. 216, 217 (1928).

**24.** *Wilson, supra* note 20 at 722; *McCurry, supra* note 20 at 94, 101 S.Ct. at 414; RESTATEMENT OF JUDGEMENTS, *supra* note 19 at 852.

**25.** *Carris v. John R. Thomas and Associates,* Okl., 896 P.2d 522, 527 (1995); *Chambers, supra* note 20 at 1072; *Wilson, supra* note 20 at 722 n. 23. See also *A.W. Wendell & Sons, Inc. v. Qazi,* 254 Ill.App.3d 97, 193 Ill.Dec. 247, 256–257, 626 N.E.2d 280, 289–290 (1994); *Cirro Wrecking Company v. Roppolo,* 153 Ill.2d 6, 178 Ill.Dec. 750, 758, 605 N.E.2d 544, 552 (1992).

**26.** The terms of 12 O.S.1991 § 953 are:

"*An order* affecting a substantial right in an action, when such order, in effect, determines the action and *prevents a judgment,* and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, *is a final order,* which may be vacated, modified or reversed, as provided in this article." (Emphasis added.)
*Gilliland v. Chronic Pain Associates,* Okl., 904 P.2d 73, 76 (1995); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 893 (1985); *Moses v. Hoebel,* Okl., 646 P.2d 601, 603 (1982); *Stubblefield v. GMAC,* Okl., 619 P.2d 620, 624 (1980); *Centorp Corporation v. Gulf Production Corp.,* 183 Okl. 436, 83 P.2d 181 (syl. 1) (1938). Ordinarily, an order's finality is measured by the effect it has on the termination of the proceedings. *In re Estate of Caldwell,* Okl., 692 P.2d 1380, 1381 n. 5 (1984).

**27.** *Gilliland, supra* note 26 at 76; *Patmon v. Block,* Okl., 851 P.2d 539, 543 (1993); *Southwestern Natural Gas Co. v. Vernor,* 178 Okl. 344, 62 P.2d 1262, 1265 (1936); *Sanford v. Street,* 178 Okl. 172, 62 P.2d 479, 480 (syl. 3) (1936).

**28.** For the pertinent terms of the September 11, 1991 dismissal, see *supra* note 4.

for the offer and sale of a business opportunity in Oklahoma. It seeks recovery for lost profits caused by CFO's failure to furnish reliable lender data under the agreement's terms.

Although this theory of liability is different from that pressed in *National I,* the underlying foundation of the tendered controversy remains the same. Both lawsuits are predicated on a relationship that was created by—and therefore *arises out of*—the very same contract of which the forum-selection clause is a part.

The precluded issue in *National I* clearly targets the contract-based relationship that limited litigation to the situs prescribed in that document. Even though issue preclusion may be viewed as more narrow in scope than claim preclusion, the outer boundaries of a precluded issue must be firmly *charted along the character of the litigation.*[29] Tendered in *National I* was a controversy *arising out of* a contractual relationship. *That did not change in National II.* Albeit on different theories, *in both lawsuits* contract-generated rights were sought to be redressed. The issue that stands barred by *National I's preclusion* is *co-extensive with any controversy* that owes its origin or existence to the contract-derived relationship between the parties. In short, because *National II,* much like *National I,* seeks to redress rights arising from the same contract, the forum-selection clause in that document governs, regardless of the theory selected by the pleader for the agreement's vindication.

Because all issues in this controversy arise out of the February 22, 1991 contract, National cannot escape the issue-preclusion bar by now changing its theory of recovery. Inasmuch as the September 11 order fully and fairly settles the binding effect of the forum-selection clause for all of the parties' disputes that are derived from their single contract, and the present action re-presents the same facts under the garb of a different basis for liability, issue preclusion operates in *National II* to bar from relitigation the previously adjudicated effect of the contested forum-selection clause.

## SUMMARY

Once an issue has been reached and decided, the doctrine of issue preclusion operates to bar its relitigation in a later action that is once again rested on rights derived from the same contract, though they are pressed on a different theory of recovery. The trial court's decision in *National I* "fully and fairly" settled the forum-selection dispute by ruling that only Texas affords the correct forum for adjudication of rights derived from the parties' conduct *under their contract.* Because *National II,* much like *National I,* seeks to redress interests acquired from the very same contract whose critical clause's effect now stands settled by the precluded issue, National may not *again interpose that clause for another judicial inquiry into its breadth.*

On certiorari granted upon the Texas company's petition, the Court of Civil Appeals' opinion is vacated and the trial court's dismissal order is affirmed.

KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., concur.

HODGES and WATT, JJ., dissent.

---

**29.** The Restatement (Second) of Judgments' test for determining the scope of *issue preclusion* is akin to the law's method for defining the outer reach of *claim preclusion.* Both doctrines have a similar purpose—" 'to prevent repetitious litigation of what is essentially the same dispute.' " 18 Wright & Miller, Federal Practice and Procedure § 4417 at 149 (quoting Restatement (Second) of Judgments, 1981,. § 27, Comment c).  ·