**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PALO DURO PRODUCTION
COMPANY,

Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate
capacity,

Defendant-Appellee.

No. 98-6410
(D.C. No. CV-95-391-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal.   <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Palo Duro Production Company brought this action alleging that the FDIC breached a contract by which the FDIC sold certain notes and their collateral to Palo Duro.  Specifically, Palo Duro alleged that the FDIC breached the contract's cooperation clause by opposing Palo Duro's attempt to foreclose on collateral that Palo Duro contends the FDIC sold to it through the contract, collateral that an Oklahoma state court found the FDIC had conveyed to Palo Duro.  The district court granted summary judgment in favor of the FDIC, and Palo Duro appeals.  We conclude that the state court resolved the critical issue against the FDIC: what collateral did the FDIC sell to Palo Duro.  This determination should be given collateral estoppel or issue preclusive effect.    [1]  We therefore reverse.

The subject matter of the Palo Duro-FDIC contract originated in the early 1980s, when First National Bank and Trust of Oklahoma loaned money to Rambler Oil Company.  Rambler secured its debt by giving the bank mortgages on interests it owned in various oil and gas wells.  By August 1985, Rambler owed

---

[1]     Although the parties and the district court used the term "collateral estoppel," we note that Oklahoma law governs application of this doctrine here, and Oklahoma state courts have generally switched to the more modern term "issue preclusion."   *See, e.g.*, *National Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc.*, 946 P.2d 662, 666-67 (Okla. 1997).  We therefore use the term "issue preclusion" in this decision.

approximately $4.2 million plus interest and was in default. Rambler and the bank agreed to restructure the debt by entering into the "Transfer and Loan Agreement" (TLA). The TLA divided Rambler's debt into three parts. One part ($1.3 million) was paid off. The second part ($1.4 million) was released in exchange for the absolute conveyance to the bank of 80% of Rambler's interests in the wells. These interests are referred to as the "80% deed in lieu properties." The third part of Rambler's debt ($1.3 million) was restructured into three new notes--Rambler Renewal Note I, Rambler Renewal Note II, and the Senco Note. The TLA did not extinguish the mortgages Rambler had given the bank to secure the original debt, specifically leaving the portion of the mortgages securing the 80% properties in full force to preserve their priority with respect to third parties.

In October 1985, the bank sold the 80% deed in lieu properties to Unit Petroleum Corporation. In November 1985, the bank and Unit executed a "Nominee Agreement" through which the bank assigned to Unit an undivided interest in the Rambler mortgages to the extent they encumbered the 80% deed in lieu properties. It is the ownership of this interest that is the critical issue in this litigation. Pursuant to the Nominee Agreement, the bank was to retain record title to the mortgages on the 80% properties for the benefit of Unit for two years or until Unit wanted title transferred to itself. Therefore, one critical effect of the agreement was that there would be no immediate recorded release of the

mortgages to Unit. Unfortunately for Unit and eventually for the FDIC, the bank failed in July 1986, before the 80% mortgages were ever released to Unit, and the nominee agreement was not in the bank's files when the FDIC took over the bank as receiver. [2]

The FDIC in its receiver capacity subsequently assigned certain assets including the Rambler Renewal and Senco notes to itself in its corporate capacity, and it hired Consolidated Asset Management Company to sell these assets. Palo Duro, led by Joseph Vaughn, who had previously been a Rambler vice-president and had signed the TLA on Rambler's behalf, initiated negotiations to purchase the Rambler Renewal and Senco notes. These negotiations resulted in the Note Purchase and Participation Agreement (NPPA), dated August 1, 1988, by which the FDIC sold the three notes and their collateral to Palo Duro. [3] Section 11.13 of the NPPA, which the parties refer to as the "cooperation clause," stated as follows:

---

[2]     In Palo Duro's state court foreclosure action, the court found that Palo Duro was not entitled to the benefit of the doctrine stated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), or its statutory codification, 12 U.S.C. § 1823, which prohibits claims based on agreements not reflected in the official records of a failed bank, *see FDIC v. Noel*, 177 F.3d 911, 914 (10th Cir. 1999). In its summary judgment order, the district court did not mention the *D'Oench, Duhme* doctrine, nor have the parties raised it on appeal. We therefore do not address it.

[3]     Actually, FDIC sold only an 87.5% participation interest in Rambler Renewal Note II. It also sold other assets not relevant to our discussion.

-4-

[The FDIC] shall not take any action, or omit to take any action, which will impair the ability of [Palo Duro] to collect on the Senco Note, Senco Collateral, Rambler Renewal Note I, Rambler Renewal Note I Collateral, Rambler Renewal Note II, Rambler Renewal Note II Collateral, Drilling Program Note, and Drilling Program Note Collateral. [The FDIC] shall be liable if it takes such action in breach of this Agreement.

Appellant's App. at 375.

On January 12, 1989, after the Rambler Renewal and Senco notes were in default, Palo Duro and the FDIC filed a joint petition in the state district court of Blaine County, Oklahoma, against Rambler, Unit, and a number of other defendants seeking to foreclose on the mortgage interests securing the notes that were located in Blaine County. Sometime after jointly filing the petition, [4] the FDIC realigned itself as a defendant on Palo Duro's claim regarding the mortgages securing the 80% deed in lieu properties. Palo Duro then filed a cross-claim against the FDIC for breach of the NPPA's cooperation clause, i.e., the same claim it asserts in this case. After the state trial court bifurcated the cross-claim and set it for trial two months after the foreclosure action, Palo Duro voluntarily dismissed the cross-claim. [5] Ultimately, the state trial court found that

---

[4] That is, after learning from Unit about the Nominee Agreement.

[5] Presumably, the state court dismissed the cross-claim without prejudice. *See* Okla. Stat. tit. 12, § 683. In any event, FDIC has not contended that Palo Duro was precluded from reasserting this claim in federal court because of its voluntary dismissal of the cross-claim in state court.

the FDIC had conveyed the portion of the mortgages securing the 80% deed in lieu properties to Palo Duro, that Palo Duro's claim to those mortgages was superior to Unit's, and that Palo Duro had the right to foreclose on them. Unit and the FDIC appealed, and the Oklahoma Court of Appeals affirmed in an unpublished decision.

In March 1995, two years after the appellate court's affirmance, Palo Duro filed this breach-of-contract action in the district court. Palo Duro contends that the FDIC breached the cooperation clause by opposing its effort to foreclose on the mortgages securing the 80% deed in lieu properties. Following discovery and other pretrial proceedings that the district court described as hostile and full of animosity, the parties filed cross motions for summary judgment. Rejecting Palo Duro's primary argument that the state courts had already resolved the dispositive issue of what collateral FDIC conveyed to Palo Duro and relying on extrinsic evidence, the district court determined that the parties did not intend that the mortgages on the 80% properties be conveyed to Palo Duro through the NPPA. The court therefore granted summary judgment in the FDIC's favor.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court does under Fed. R. Civ. P. 56. *See Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995). On appeal, Palo Duro reasserts its issue preclusion argument, along with a variety of others.

-6-

Because we conclude the district court incorrectly rejected that argument, and therefore improperly granted summary judgment to the FDIC, we need address only that issue.

"[F]ederal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered." *Comanche Indian Tribe v. Hovis*, 53 F.3d 298, 302 (10th Cir. 1995). "Under the doctrine of issue preclusion (formerly known as collateral estoppel), once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." *National Diversified Bus. Servs.*, 946 P.2d at 666 (footnote omitted); *see also Comanche Indian Tribe*, 53 F.3d at 303 (applying Oklahoma law). "The purpose of issue preclusion is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Miller v. Miller*, 956 P.2d 887, 897 (Okla. 1998) (quotation omitted).

Critical to note at the outset of our analysis is an undisputed point: the parties agree that the cooperation clause applies to whatever collateral the FDIC conveyed to Palo Duro through the NPPA. *See* Appellant's Br. at 8; Appellee's Br. at 2. Thus, the preliminary issue pivotal to the validity of Palo Duro's breach-

of-contract claim is whether the NPPA conveyed the mortgages on the 80%

properties to Palo Duro.

We conclude the state trial court resolved that issue in Palo Duro's favor

and that the resolution was necessary to its decision. Although the state trial

court did not specifically refer to the NPPA in its written "journal entry of

judgment," it is clear from the Oklahoma Court of Appeals decision that the trial

court based its determination on the NPPA. The court of appeals explained that

"FDIC in its corporate capacity . . . sold the notes to Palo Duro," and that "[t]he

essential issue at trial was what interests or collateral secured the notes."

Appellant's App. at 1223. It further explained that FDIC's position on appeal

was "that the 80% deed in lieu properties secured the released portion [of the

debt], but not the renewed portion and that [Palo Duro] only bought the renewed

portion." *Id.* It noted that as propositions of error, FDIC asserted, inter alia, that

"[Palo Duro] was not a bona fide purchaser for value . . . ." *Id.* at 1226.

Addressing the merits of the FDIC's (and Unit's) contentions, the court stated:

> The parties agree that the threshold question is whether the
> paper bought by [Palo Duro] was secured by the 80% deed in lieu
> properties which Unit had acquired in 1985. Having reviewed the
> record, we cannot say that the trial court's judgment, on this issue,
> was against the clear weight of the evidence or erroneous as a matter
> of law or equity.
>
> The documentary and testimonial evidence, properly admitted
> at trial, clearly show that the renewal notes bought by [Palo Duro]
> from the FDIC, in its corporate capacity, were renewals and

-8-

extensions of RAMBLER'S prior indebtedness. [Palo Duro] was a bona fide purchaser for value. The nominee agreement was not filed. Securing the notes and their renewals were many prior mortgages and other instruments, all properly filed and not released. Among the security is the 80% interest at issue here. Unit acquired its interest in the 80% properties after [Palo Duro]. The court properly found Unit's interest inferior to that of [Palo Duro]. The evidence shows the court properly interpreted the contracts. The court's findings relating to the facts of this threshold question are not against the clear weight of the evidence. The court did not commit an error of law or equity.

Appellant's App. at 1227.

The FDIC contends that the state court decision is not entitled to issue preclusive effect because that decision "only decided whose claims to the 80% interests had priority under Oklahoma land records." Appellee's Br. at 17. The FDIC further argues that Palo Duro's issue preclusion argument ignores two distinct elements to this case: "(1) what the NPPA's terms covered and thus what the FDIC was *contractually obligated* to convey and cooperate on (the breach of contract issue); and (2) whether Palo Duro could foreclose on the mortgages it *actually obtained* (the foreclosure issue)." *Id.* at 21 (footnote omitted). We do not see these as "distinct elements." Resolution of Palo Duro's foreclosure rights and the priority issue necessarily had to be preceded by the determination that, through the NPPA, the FDIC sold the mortgages on the 80% properties to Palo Duro. Almost in passing, the FDIC also contends that "interpretation of the assignment documents was critical to the court's findings with respect to the

property interests conveyed." Appellee's Br. at 21-22. While the state court may well have considered the assignments, that does not detract from its ultimate determination of what interests the FDIC sold to Palo Duro through the NPPA.

The district court recognized that the state court had held that the NPPA conveyed the 80% mortgages to Palo Duro. However, it rejected Palo Duro's issue preclusion argument because the state court had not resolved the precise claim Palo Duro was asserting:

> Clearly, the parties litigated in state court the issue of whether Palo Duro was entitled to foreclose on all properties, not whether the FDIC breached the NPPA. *Although the state court found that Palo Duro received its right to the collateral in the NPPA*, it did not find that NPPA obligated the FDIC to support Palo Duro's claims concerning the 80% properties. The court did not adjudicate the issue of an alleged breach of the NPPA or the intent of the parties when the NPPA was executed. What role the FDIC should have taken in accordance with its obligations to Palo Duro under the NPPA was initially placed at issue but was never adjudicated. Instead, Palo Duro dismissed its cross claim and filed this action. Hence, Palo Duro's collateral estoppel and res judicata issues are inapplicable.

Appellant's App. at 1650-51 (District court's September 29, 1998 order at 5-6) (emphasis added). This is too narrow a view of what the first court must decide for its decision to preclude further consideration of an issue. Issue preclusion applies to issues, not entire claims, that were necessarily decided in prior litigation. Thus, as noted earlier, "once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate

that issue *in a suit brought upon a different claim*." *National Diversified Bus. Servs.*, 946 P.2d at 666 (emphasis added). That is what the FDIC has tried to do here: relitigate the issue of what collateral the NPPA conveyed. Because the state court already decided that issue, the FDIC is precluded from relitigating it.

The parties' admissions and the prior litigation thus establish that the FDIC was obligated to cooperate on whatever the NPPA conveyed to Palo Duro, and that the NPPA conveyed the mortgage interests on the 80% properties. Summary judgment in the FDIC's favor at this point was therefore improper. The key remaining issue is whether the FDIC's opposition to Palo Duro's foreclosure action on the 80% mortgages constituted a breach of the cooperation clause, an issue the district court will need to resolve on remand.

Therefore, the judgment in favor of the FDIC is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge