2008 OK CIV APP 31

OKLAHOMA TRANSPORTATION AU-THORITY, formerly the Oklahoma Turnpike Authority, a body corporate and politic, Plaintiff/Appellee,

v.

Richard Leon TURNER and Dorothy Frances Turner, trustees of the Turner Family Revocable Trust dated June 28, 1993; the Board Of County Commissioners of the County of Wagoner; the Treasurer of Wagoner County, Oklahoma; and their successors, Defendants/Appellants.

No. 103,187.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 31, 2007.

Rehearing Denied Dec. 21, 2008.

Certiorari Denied Feb. 25, 2008.

Jot Hartley, The Hartley Law Firm, Vinita, OK, for Appellee.

Robert J. Nichols, Brian A. Curthoys, Tulsa, OK, for Appellants.

JOHN F. FISCHER, Presiding Judge.

¶1 Richard Leon Turner and Dorothy Frances Turner, trustees of the Turner Family Revocable Trust dated June 28, 1993, seek review of the Trial Court's order denying their Motion for New Trial. Based on our review of the record and applicable law, we affirm in part, reverse in part and remand the matter to the Trial Court for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The Oklahoma Transportation Authority (OTA) is a body corporate and politic, created pursuant to 69 O.S. Supp.2005 § 1703 and authorized to construct, maintain, repair and operate turnpike projects in Oklahoma. *See* 69 O.S. Supp.2005 § 1701.[1] Prior to 1999, the OTA determined that acquisition of 20.27 acres of real property owned by the Turner Family Revocable Trust located in Wagoner County, Oklahoma (the Property) was necessary for its Creek Turnpike project. Although not required to do so,[2] the OTA chose to follow the negotiation procedures set out in Title 27, specifically section 13,[3] prior to filing a condemnation proceed-

---

1. Hereafter, unless otherwise noted, statutory references shall be to the Oklahoma Turnpike Act, 69 O.S. Supp.2005 §§ 1701–1735.

2. *See Question Submitted by: Neal A. McCaleb, State Department of Transportation, State Department of Transportation,* 1999 OK AG 66, ¶5, ("the terms of 27 O.S. 13 (1991) prescribing the general policies for the acquisition of real property by condemnation create no rights or liabilities, and, therefore, compliance with the policies found in Section 13 is not a condition precedent to a valid condemnation by the Oklahoma Turnpike Authority"). Opinions of the Attorney General are persuasive authority and "silence by the Legislature may be regarded as acquiescence or approval of that construction." *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, ¶22, 109 P.3d 314, 320.

3. Section 13 provides, in pertinent part:

Any person, acquiring agency or other entity acquiring real property for any public project or program described in Section 9 of this title shall comply with the following policies:

1. Every reasonable effort shall be made to acquire, expeditiously, real property by negotiation.

2. Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head or governing body of the entity acquiring real property, if so mandated by federal law or regulation, may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value as such value is defined by federal law or regulation.

ing. An independent appraiser was selected who determined the value of the "just compensation" due the Turners to be $322,000.[4] The OTA offered that amount pursuant to 27 O.S.2001 § 13.3. Nonetheless, the Turners rejected that amount, and the OTA's attempt to negotiate a resolution of the matter was unsuccessful.

¶3 The OTA then filed a petition to condemn the Property on March 16, 1999. Pursuant to 69 O.S. Supp.2005 § 1708, three commissioners were appointed and subsequently filed their written report finding $600,000 to be the fair market value of the property taken and net damages to the remainder after consideration of any enhancement.[5] Pursuant to section 1708(b)(1), both parties requested a jury trial.

¶4 Prior to trial, the Turners filed a motion in limine seeking to exclude "the introduction of appraisal testimony from any appraiser regarding fair market value less than the actual independent appraisal of $332,000." In the alternative, the Turners' motion requested that, should any such testimony be admitted, they be permitted to introduce the independent appraisal as an admission against party interest. Although it is not clear from the record on appeal, it appears the Trial Court denied the Turners' motion in limine.

¶5 At trial, the OTA offered the testimony of two expert witnesses. Appraiser Rick El-

lis testified that the fair market value of the land taken was $149,309, and appraiser John Story testified that the fair market value of that land was $78,000.

¶6 The Turners objected to the admission of Story's testimony and sought to introduce the independent appraisal, both without success. The jury ultimately returned a verdict for the Turners in the amount of $85,406.20. The Turners filed a timely motion for new trial, raising two issues: (1) whether the Trial Court erred by excluding the independent appraisal, and (2) whether Story's testimony was properly admissible. The Trial Court denied the Turners' motion, and they appeal.

## STANDARD OF REVIEW

¶7 We review a trial court's denial of a motion for new trial for an abuse of discretion. *SMS Fin. L.L.C. v. Ragland,* 1995 OK CIV APP 160, ¶2, 918 P.2d 400, 402. Such an abuse will be found only where the Trial Court makes a "clearly erroneous conclusion and judgment, against reason and evidence." *Bank of Oklahoma v. Portis,* 1997 OK CIV APP 32, ¶8, 942 P.2d 249, 252. By contesting the Trial Court's admission and exclusion of evidence, the Turners have raised questions of law, which we review *de novo. See Nat'l Diversified Bus. Servs., Inc. v. Corp. Fin. Opportunities, Inc.,* 1997 OK 36

3. Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor and such amount shall be promptly offered for the property. In no event shall such amount be less than the approved appraisal of the fair market value of such real property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The owner of the real property to be acquired shall be provided with a written statement of, and summary of the basis for, the amount established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

\* \* \*

11. As used in this section: a. "Appraisal" means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information.

4. A copy of this independent appraisal is not included in the appellate record but neither party disputes the amount of that appraisal.

5. Prior to Trial, the defendants successfully moved to bifurcate the issues of just compensation for the actual taking of the Property and any special and direct benefits to the remainder of Turners' land as a result of the taking. The parties settled the second issue of damages to the remainder by agreement prior to trial, and, consequently, there is no appellate issue regarding that matter in this appeal.

n. 18, 946 P.2d 662, 666 n. 18. Thus, the Trial Court has abused its discretion only where its decision to exclude or include evidence constitutes clear legal error. *Id.*

## DISCUSSION

### I. Unfair Surprise

■ ¶8 Title 12 O.S.2001 § 651(3) provides that a trial court shall grant a new trial where an "[a]ccident or surprise, which ordinary prudence could not have guarded against," affects the substantial rights of the parties. The Turners contend that the admission of Story's testimony constitutes such a surprise because Story had not finalized his opinion as to the value of the property until the morning of trial. Although neither party contests the truth of this assertion, such does not constitute unfair surprise because ordinary prudence could have guarded against any prejudicial effect of Story's testimony. *See Marshall v. Marshall,* 1898 OK 68, 54 P. 461 ("New trials on the ground of fraud and surprise are only granted in cases where parties are actually surprised-where fraud has been actually committed, and the party against whom it was practiced could not, with due diligence, have foreseen it, so as to meet it on the trial").

¶9 Our review of the record on appeal establishes that Story was listed as an appraisal witness in the pretrial order. The Turners neither filed a motion in limine seeking to exclude Story's testimony nor objected to the inclusion of Story as a witness on the pretrial order. Although the Turners never deposed Story prior to trial, the OTA offered the opportunity to depose him several times. Further, following the Turners' objection to admission of Story's testimony, the Trial Court permitted the Turners to depose Story outside the presence of the jury prior to proceeding. Any unfair surprise contained in Story's testimony could have been readily avoided by the exercise of ordinary prudence on the part of the Turners' attorneys. We hold, therefore, that the Trial Court did not abuse its discretion by permitting Story to testify at trial.

### II. Admissibility of the Independent Appraisal

■ ¶10 As their second allegation of error, the Turners argue that the independent appraisal was improperly excluded by the Trial Court. They argue it was admissible, either as an admission against party interest, 12 O.S. Supp.2002 § 2804(B)(3), or for impeachment as a prior inconsistent statement, 12 O.S. Supp.2002 § 2613(B). First, it is important to note that the independent appraisal authorized by 27 O.S.2001 § 13 is entirely different from the report of commissioners authorized by 69 O.S. Supp.2005 § 1708. The purpose of the independent appraisal is to establish a value at which to begin negotiations for the acquisition of property prior to any condemnation proceeding. The commissioners' report establishes the amount the condemning authority must pay the land owner before taking possession of the property.

¶11 Consequently, our analysis is not directed by those cases from the Oklahoma Supreme Court holding that the commissioners' report is not admissible at a jury trial on the value of the property taken. *See, e.g. Oklahoma Turnpike Auth. v. Daniel,* 1965 OK 7, 398 P.2d 515; *Eberle v. State* 1963 OK 224, 385 P.2d 868; *Champlin Ref. Co. v. Donnell,* 1935 OK 788, 49 P.2d 208. The evidentiary principle expressed in those cases is ultimately derived from *St. Louis El Reno & Western Ry. Co. v. Oliver,* 1906 OK 111, 87 P. 423. As relevant to this discussion, the issue in *Oliver* was whether the court could or the jury had to determine the amount of interest awarded to the landowner. In determining that the court could determine the interest amount if it is "but a matter of mathematical computation," the *Oliver* Court noted that the trial court had "out of commendable precaution refrained from informing the jury of the amount of the award." *Id.* at ¶20 and ¶26, 87 P. at 426, 427. The issue on appeal in *Oliver* was whether a landowner's right to interest depended on whether the jury verdict exceeded the value determined by the commissioners.

¶12 The cases excluding such evidence pursuant to syllabus 3 of the *Oliver* Opinion generally do so without analysis or elabora-

tion. *See, e.g. Wichita Falls & N.W. Ry. Co., v. Munsell,* 1913 OK 373, ¶ 2, 132 P. 906 ("Over the objection of plaintiff, defendant was permitted to prove the amount of the award made by the [commissioners]. This was error . . . .") (citation to *Oliver,* omitted). Further, all of these cases predate the enactment of the negotiation procedures established by 27 O.S.2001 § 13. And, there is no Oklahoma appellate decision holding that the independent appraisal authorized pursuant to section 13 is inadmissible. Consequently, we do not find *Oliver, Munsell* and similar cases dispositive of the issue in this appeal.

¶ 13 The trial in this case was conducted pursuant to section 1708. In addition to providing a right to trial for the parties, that section also provides that "the trial shall be conducted and judgment entered in the same manner as civil actions in the district court." 69 O.S. Supp.2005 § 1708(b)(3). The Oklahoma Evidence Code, 12 O.S.2001 §§ 2101–3009, "shall apply in . . . civil proceedings, conducted by or under the supervision of a court, in which evidence is produced." 12 O.S.2001 § 2103. Pursuant to section 2402 of the Evidence Code, "All relevant evidence is admissible" unless excluded by (1) a statute, (2) another provision of the Code, or (3) a provision of the State or federal Constitutions.

◼ ¶ 14 Title 27 O.S.2001 § 15, provides, "The provisions of [27 O.S.2001 § 5] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." The OTA contends that because the independent appraisal creates no rights or liabilities, the independent appraisal is inadmissible. This argument misperceives the focus of section 15. Title 27 O.S.2001 § 5 grants the power to condemn land to "[a]ny county, city, town, township,

school district, or board of education, or any board or official having charge of cemeteries." As we have previously discussed, OTA could not be compelled to use the procedures established in Title 27. In this instance, however, the OTA voluntarily chose to employ those negotiation procedures to procure an independent appraisal "reasonably believed to be just compensation" for the Property taken from the Turners. If relevant to the value of the Property, the independent appraisal is admissible unless excluded by some other provision of the Evidence Code.

◼ · ¶ 15 The OTA does not argue that the independent appraisal is not relevant to the determination of the value of the property taken from the Turners. Rather, it contends that the appraisal was not competent evidence because it was completed "without sufficient information as to the physical condition of the subject property." That objection, apparently not of concern to the OTA when it offered to purchase the Property for the amount of the independent appraisal, may go to the probative value of the appraisal but not to the competency or qualification of the independent appraiser. Admission into evidence of the testimony and reports of expert witnesses, like the independent appraisal in this case, is specifically authorized by section 2702 of the Evidence Code, the same provision on which the OTA relied to offer the testimony of appraisers Ellis and Story.

¶ 16 The OTA also contends that because the independent appraisal was required by statute, it should be excluded from evidence as an inadmissible offer to settle or compromise a disputed claim pursuant to 12 O.S. 2001 § 2408.[6] On this point, we find instructive *U.S. v. 320.0 Acres of Land,* 605 F.2d 762

6. Title 12 O.S.2001 § 2408 provides, in its entirety:

Evidence of:
1. Furnishing, offering or promising to furnish; or
2. Accepting, offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for the claim, invalidity of the claim or the amount of the claim.

Evidence of conduct or statements made in compromise negotiations is not admissible. This section does not require the exclusion of discoverable evidence merely because it is revealed in the course of compromise negotiations. This section does not require exclusion of evidence when it is offered for another purpose, including proof of bias or prejudice of a witness, negativing a contention of undue delay, or proof of an effort to obstruct a criminal investigation or prosecution.

(5th Cir.1979), and its interpretation of Federal Rule of Evidence 408.[7]  In 320.0 Acres, the Fifth Circuit considered the admissibility in a condemnation proceeding of statements of just compensation submitted to the landowners in compliance with a procedure similar to that established by 27 O.S.2001 § 13. The Fifth Circuit held that the statements were admissible to rebut any evidence of a lower amount later offered by the condemning authority at trial; "[S]tatements of just compensation which, if sent to the landowner, presumably represent the appraised fair market value of the condemned property [and are relevant to] the question at issue in a compensation trial." *320.0 Acres*, 605 F.2d at 824.

¶ 17  In addition to the relevance of the statements, the Fifth Circuit also rejected the Government's argument that the statements were inadmissible because they constituted an offer to compromise or settle.  According to the Court, "the policy reasons for excluding offers of compromise … are not applicable to these statements," *id.* at 825, because the purpose of the statements was to avoid litigation and, at the time the statements were submitted, there was no actual dispute.  Therefore, the Court reasoned, the purpose of the statute would not be compromised by subsequent admission of the statements at trial because:

> [By statute, the Government was obligated to offer] the amount which the Government believes the landowner is constitutionally entitled to should negotiations fail and condemnation proceedings be initiated.  [Consequently,] Governmental desire to avoid these costs should be sufficient incentive to attempt a negotiated and voluntary sale of the property, regardless of the admissibility of the statements.

*Id.* at 825.

¶ 18  While we agree that the condemning authority is unlikely to be deterred from negotiating in good faith if the independent appraisal is admissible at a subsequent trial, we do not believe the issue is resolved according to whether or not a dispute exists.

Obviously, litigation does not result if the property owners accept the amount established by the independent appraisal but does if they do not.  It is difficult to conceive of this contest as one in which the parties' claims to the property are not in dispute. Nonetheless, section 2408 and Federal Rule 408 only exclude offers to compromise that are offered to prove liability.  Liability is not an issue in a condemnation proceeding.  Assuming the condemning authority has the right to take the property, the issue at trial is just compensation for the property taken.

¶ 19  Further, an independent appraisal would be the kind of material that is "discoverable" in a condemnation proceeding. Therefore, even if excluded by the first paragraph of section 2408, the appraisal would nonetheless be admissible pursuant to the express terms of the second paragraph of section 2408.

¶ 20  Finally, the settlement negotiations to which section 2408 of the Evidence Code refers are distinguishable from condemnation negotiations in an important respect.  There is not, ordinarily, any obligation on a party negotiating the settlement of a claim to offer or accept only an amount reasonably believed to be the fair market value of the claim. Many factors affect a party's willingness to compromise a litigated claim and, almost by definition and certainly in common experience, compromise results in the accepting party receiving less than the full value of the claim.

¶ 21  Here, an independent appraiser was selected to establish the fair market value of the Property.  The OTA was required by statute to offer at least that amount if it reasonably believed that amount to be the fair market value of the Property. Charged with that obligation, the OTA should be able to defend that offer or explain at trial why it believes the earlier appraisal to be inaccurate.  *Cf. 320.0 Acres*, at 605 F.2d at 825.  The purpose of the independent appraisal is to achieve the taking through negotiation rather than litigation.  Conse-

---

7.  Federal court decisions may be examined for persuasive value when they construe federal rules of evidence similar to the Oklahoma Evidence Code. *Christian v. Gray*, 2003 OK 10, ¶ 6, 65 P.3d 591, 596.

quently, the independent appraisal cannot be used to coerce or "compel an agreement on the price to be paid for the property" by, without justification, penalizing land owners who exercise their right to have a jury determine the value of the property taken. *See* 27 O.S.2001 § 13(7). There is no suggestion in the record that the OTA offered the testimony of Ellis or Story for this purpose. But if the jury is to determine the value of the Turners' Property, it is entitled to consider all evidence admissible in any other "civil action in the district courts."

¶ 22 As did the Court in 320.0 Acres, we conclude that the independent appraisal is admissible at trial even though it contradicts evidence offered by OTA valuing the property at a figure or figures lower than the independent appraisal.

## CONCLUSION

¶ 23 Section 13 of Title 27 sets out a procedure intended to permit the expeditious acquisition of private property for public use by negotiation and without resort to the statutory condemnation procedures. Integral to that process is the condemning authority's good faith in offering a landowner "just compensation" for the property to be taken. The independent appraisal is not binding on either party and, if negotiations are unsuccessful, both remain free to offer any other admissible evidence at trial, including evidence regarding the probative value of the independent appraisal. Consequently, unless excluded by statute or the Evidence Code for some reason not present in this case, the independent appraisal obtained pursuant to 27 O.S.2001 § 13 is admissible at the trial of a condemnation proceeding conducted pursuant to 69 O.S.2001 §§ 1701–1735,[8] for the purpose of rebutting evidence offered by the condemnor of a value lower than the independent appraisal.

¶ 24 The Trial Court's admission of Story's testimony did not constitute unfair surprise because the Turners had sufficient warning

of Story's testimony and ample opportunity to depose him prior to trial. However, the Trial Court abused its discretion by denying the Turners' motion for new trial because the exclusion of the independent appraisal constituted error.

¶ 25 AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

RAPP, C.J., and WISEMAN, J., concur.

---

8. Because we resolve the admissibility of the independent appraisal on the basis of the Evidence Code, we do not address the constitutional arguments raised in this case nor preclude its exclusion in other circumstances based on a pro-

vision of the State or federal Constitutions. This Court will not decide constitutional issues "in advance of strict necessity." *Smith v. Westinghouse Elec. Corp.,* 1987 OK 3, n. 3, 732 P.2d 466, 467, n. 3.