## BRETT v. FIELDER et al.

No. 16588. Opinion Filed May 29, 1928.

Rehearing Denied May 14, 1929.

Brett & Brett, Earl Q. Gray, and Hirsh & Hirsh, for plaintiff in error.

Ledbetter & Ledbetter, for defendant in error Lena Fielder.

JEFFREY, C. This action was commenced February 28, 1924, by Lena Fielder, as plaintiff, against J. J. Eaves and R. H. Brett, as defendants, to set aside a judgment obtained against her by the said J. J. Eaves on October 9, 1922, in an action in the district court of Carter county, wherein said J. J. Eaves was plaintiff and Karl Helbach, Lena Fielder, Premier Sales & Electric Company, and the Indemnity Mutual Marine Assurance Company, of London, were defendants, to vacate the sale proceedings under an execution issued out of said action, and to cancel the sheriff's deed made to R. H. Brett covering plaintiff's one-eighth interest in lots 4 and 5 in block 99, lot 4 in block 381, and lot 6 in block 378, in the city of Ardmore. The principal grounds upon which this action was based are that the attorney for plaintiff in the former action led this plaintiff to believe by statements made to her and to Karl Helbach that plaintiff did not intend to take judgment against her in that action, and, further, that the property levied upon and sold by the sheriff was in the hands of a receiver, and that the sale thereof was void.

The cause was tried to the court, and judgment rendered in favor of plaintiff, from which judgment the defendant R. H Brett has appealed. The trial court made findings of fact and conclusions of law, many of which were excepted to and assigned as error in this court.

The action out of which the sale proceedings arose, and which are attacked in this action, will be designated as Eaves v. Hel-

bach. The facts in that case were substantially as follows: Karl Helbach, who was Lena Fielder's son-in-law, purchased an automobile and gave his note for the sum of $885, the same being a part of the purchase price of said automobile. Lena Fielder signed the note with Helbach. The automobile was insured against collision, but the policy contained a provision that said car was not to be used as a public service car. Helbach wrecked the car, and failed to pay the note when it became due, but upon demand he turned the car over to the City State Bank of Ardmore, which was acting as agent for the holder of the note. Eaves, who was the holder of the note, brought suit on the note and insurance policy, but only secured service of summons upon Lena Fielder and the insurance company. Lena Fielder, through her attorney, O. C. Lasher, filed a demurrer. The demurrer was overruled, and no further pleading was filed on her behalf prior to trial. Shortly before the date of trial, Eaves' attorneys wrote R. E. Helbach, a brother of Karl Helbach, informing him that the cause was set for trial October 9, 1922, and requested information of the whereabouts of Karl Helbach. The letter further stated that Karl Helbach was merely wanted as a witness; that Eaves was not seeking a judgment against him, but against the insurance company; and that if Karl Helbach would come and testify in the case they would agree that no judgment would be rendered against him. On the date of the trial Karl Helbach, in response to the letter, appeared and testified. The evidence disclosed that, at the time the automobile was damaged, it was being used for a purpose not insured against, and judgment was rendered in favor of the insurance company. However, Eaves secured judgment against plaintiff, Lena Fielder, she being in default. Immediately after judgment was rendered against Lena Fielder, she was notified of this fact, and she located her attorney, O. C. Lasher, and informed him of the judgment. After Lena Fielder informed Lasher that a judgment had been rendered against her, he secured the assistance of another attorney, by the name of R. L. Disney, and they prepared and filed in said action a motion to vacate the judgment and for a new trial. This motion to vacate and for a new trial was later overruled, and notice was given of an intention to appeal to the Supreme Court, and an extension of time within which to prepare, serve and settle the case made was allowed by the court. The time for preparing the appeal expired, and no appeal was taken. Later, execution was issued out of this action against Lena Fielder, levied upon her interest in the real property, and sold by the sheriff to defendant R. H. Brett. After the sheriff's deed was issued, Lena Fielder commenced this, an independent action, to set aside the judgment, sale, and sheriff's deed.

The first question presented by this appeal is, Can plaintiff maintain this action to vacate the judgment of the court in the former action, and to set aside the sheriff's deed, she having failed to appeal from the order overruling her motion to vacate the judgment and for a new trial? Plaintiff, of course, contends that immediately prior to the trial of the Eaves v. Helbach Case, she was led to believe by the letter written to R. E. Helbach that a judgment was not sought against anyone except the insurance company, and by the further representations of Eaves' attorneys, who stated, on the day of the trial in response to an inquiry by her or her son-in-law, that she was not needed at the trial. It was also contended that the automobile which had been surrendered was worth the balance due on the note, but that no credit was allowed her or Helbach for the car. Plaintiff further contended that she was merely surety on the note sued upon in that case, and that the principal upon said note was released, and that this operated to release her from liability. In view of the evidence in the case, we seriously doubt if there is merit in any of these contentions. The record discloses that plaintiff was in default of an answer or other pleading; and that no service of summons had been had upon Karl Helbach. Whatever defense plaintiff had, or whatever grounds existed for vacating the judgment rendered against her, plaintiff knew about at the time the motion to vacate the judgment was filed. She was fully informed on the day that judgment was rendered against her of such fact, and the record discloses that she informed her attorney about the judgment and about the things on which she now relies to have said judgment vacated. The motion to vacate the judgment was filed on the 12th day of October, was presented, and overruled. A similar question was before this court in the case of McDuffie v. Geiser Mfg. Co. 41 Okla. 488, 138 Pac. 1029. The fourth paragraph of the syllabus is as follows:

"The question of jurisdiction over the defendant Geiser Manufacturing Company was by said defendant directly put in issue by its motion to vacate and set aside the former judgment of December 9, 1907. A hearing thereon being had, the motion was over-

ruled, and the court's judgment became final. Held, in a subsequent trial between the same parties, concerning the same subject-matter, that the judgment so rendered was conclusive upon said defendant, and that the question of jurisdiction could not again be considered, though grounds therefor existed that were not before, but could have been, urged."

In the case of Spokane Merchants' Ass'n v. First National Bank, 86 Wash. 367, 150 Pac. 434, it is held:

"It has become the settled law of this state, as evidenced by the repeated decisions of this court, that an order denying a motion to vacate a judgment is a bar to a subsequent proceeding, whether such subsequent proceeding be a motion or an independent action seeking the same relief."

In the case of McCord v. McCord (Wash.) 64 Pac. 748, it was held:

"Where a party fails to appeal from a refusal to set aside a judgment, he has lost his remedy, and cannot maintain another motion to vacate the judgment."

Whether all of the grounds now urged for vacating the former judgment were urged under plaintiff's motion to vacate, filed on October 12, 1924, the evidence does not clearly show, but it is certain that all the grounds now urged were known by her and her attorneys, and could have been there presented, and as a general rule a judgment by a court of competent jurisdiction is conclusive between the parties upon all the facts adjudicated, and also all the material facts which might have been presented as constituting a claim or defense. In Flueck v. Pedigo (Wash.) 104 Pac. 1119, it was held:

"Nor does the fact that the original judgment was void change this rule; it being the order denying the motion to vacate that works the estoppel, and not the original judgment, since the court does not hold the original judgment valid, but holds the parties estopped to challenge its validity."

As heretofore stated, we are doubtful whether the evidence supports plaintiff's contentions that she was misled so as to prevent her from making any necessary and proper defense in the action. But granting that the evidence is sufficient to support the trial court's findings in these particulars, plaintiff has had her day in court, and the judgment rendered on her motion to vacate the original judgment became a final judgment, and is res adjudicata of the questions here sought to have decided. Bernhard v. Idaho Bank & Trust Co., 21 Idaho, 598, 123 Pac. 481; Moore v. Horner, 146 Ind. 287, 45 N. E. 341; Gray v. Barton, 62 Mich. 186, 28 N. W. 813.

It appears that plaintiff contends that she was not represented by counsel on the motion to vacate the original judgment, or, if so, by someone whom she did not employ, and the trial court so found. However, this finding is contrary to the evidence. The evidence shows quite clearly that Mr. Lasher was employed by plaintiff in the very beginning of the case. After judgment was rendered against plaintiff, she testified that she talked with Mr. Lasher about getting the judgment set aside, and expected him to look after it and represent her interests. It appears that Mr. Lasher secured the assistance of Mr. Disney. Both of them signed the motion to vacate the judgment, and Lasher verified the allegations of the motion. The motion was sworn to before the court clerk and filed on the same day. The evidence shows that when the motion was presented, both attorneys were present in court, and that some testimony was taken in support of the motion, Lasher being one of the witnesses who testified. Whether Disney was employed by plaintiff, or with her approval, we think makes no difference. And yet it appears from the evidence that plaintiff and the Helbach boys called at Mr. Disney's office, discussed the matter of vacating the judgment, and attempted to get certain evidence in support of the motion upon the advice of Mr. Disney. There can be no question but that Lasher was engaged to represent plaintiff in an effort to have the judgment vacated, and that Lasher did appear along with Disney in connection with the motion to vacate.

The trial court found that the property here involved was in the hands of a receiver at the time of execution and sale, and that the sale was therefore void. Defendant contends that the property was not in custodia legis, and that the trial court erred in this particular. A discussion of this question will necessitate a brief statement of another case brought in the district court of Carter county by C. R. Smith et al. against Lena O. Whitmore, No. 6682 The defendant in that case and the plaintiff in this case are one and the same person. On May 19, 1920. C. R. Smith and Earl Q. Gray filed their petition in said cause against Lena O. Whitmore, now Lena Fielder, in which they alleged that they were the owners of a seven-eighths interest in the life estate and a six-sevenths interest in the remainder of the real estate here involved; that Lena O. Whitmore was the owner of the remaining interest, and that the title to said property

was based upon the will of Clay McCoy, deceased, who was the owner of the property during his lifetime. The petition further represented that under the will of Clay McCoy, Sally G. McCoy and Henry C. McCoy were appointed executors of his estate, and that the property in question was not to be sold during the life of Sally G. McCoy, but was to be rented and cared for by said executors, and the rents equally divided among all of the legatees under the will. The petition further alleged that Sally G. McCoy and Henry C. McCoy, having sold their interests in said property to Smith and Gray, refused to act further as executors; that plaintiffs and the defendant could not agree upon plans for properly caring for said property, renting the same, and dividing the income and expense; and that it was necessary that a receiver be appointed pending the action to make necessary repairs on the property, to make rental contracts, collect the rents, and to do other things ordinarily required of an executor or trustee. On June 1st, an order was made reciting the facts of the petition, and appointing H. D. McCollom, as receiver of this real estate, to make necessary repairs and improvements to make the property tenantable, to collect the rents, and to hold same subject to the order of the court. Thereafter, Lena O. Whitmore filed an answer and cross-petition, wherein she, among other things, stated that in the event the executors named in said will failed and refused to act as executors, then the court should appoint an executor or trustee, and that said executor or trustee be directed to carry out the terms of said will, and asked for an order appointing herself as such executor or trustee. Plaintiffs thereafter filed a reply in which they again prayed for the appointment of a receiver, trustee or administrator with the will annexed, by whatever title or position the court may find it proper to name him, and asked that such person so appointed be directed to carry out the terms and provisions of the will. Thereafter, and on December 13, 1920, the cause was tried to the court, and the court, among other things, found as follows:

"That the said Henry C. McCoy and Sallie G. McCoy, executors named in said will, after having executed said deeds to plaintiff herein, failed and refused to longer serve and act as executors under said will, and now all the parties hereto consent to the appointment of H. D. McCollom to succeed said executors, and in open court request the court to appoint said H D. McCollom as trustee in lieu of and to succeed the executors named in the will, Sallie G. McCoy and Henry C. McCoy."

And the judgment concludes:

"It is further ordered, adjudged and decreed that H. D. McCollom be, and he is hereby, appointed as executor in lieu of and to succeed the said Sallie G. McCoy and the said Henry C. McCoy, executors named in said will, with full power and authority to act herein under the terms and provisions of said will of Clay McCoy, deceased, and is hereby ordered and directed to take possession and control of said property, and to faithfully execute and carry out the terms and provisions of said will."

In many of the instruments filed in that case, it appears that H. D. McCollom was designated both by counsel and the court as a receiver. He filed his reports as a receiver, which were approved from time to time by order of the court designating him as receiver. In whatever capacity he was serving, he had not been discharged at the time the property in this cause was levied upon and sold under execution. It appears from the evidence, and particularly the pleadings in cause No. 6682, that attorneys for both plaintiffs and defendant had nothing in mind other than to have some one designated to carry out the terms and provisions of the will in the place of the executors, who had refused to act. Except for minor expenses, which were necessary to incur in keeping the property in tenantable order, it does not appear that there were any creditors whose interests necessitated the appointment of a receiver. The will provided that in case of death of the executors, the legatees, then living, may select an executor to carry the same into effect, and it appears by the final order and judgment of the court on December 13, 1920, that this was, in effect, done. It was not the intention of any of the parties or of the court that the property should be held intact for creditors. The sale of the property under the proceedings in the case of Eaves v. Helbach did not interfere with the purposes for which McCollom was appointed receiver or trustee. He had no greater rights concerning the property than are ordinarily given an executor or trustee by the terms of a will, and it appears to be well settled that interests of heirs in an estate may be levied upon while the same is in the course of administration, subject, however, to the payment of debts against such estate. McClellan v. Solomon, 23 Fla. 437, 11 Am. St. Rep. 381; Douglass v. Massie, 16 Ohio, 271, 47 Am. Dec. 375; Hyde v. Barney, 17 Vt. 280, 44 Am. Dec. 338; Whitmore v. Smith, 94 Okla. 90, 221 Pac. 775.

It is true that, when a court of equity has taken property into its possession by the ap-

pointment of a receiver for the purpose of preserving the property for those who have a right to proceed against it for debts, the property will be regarded as in custodia legis, and not subject to seizure and sale in another action. To permit property that is so held to be levied upon and sold under execution would defeat a well-recognized power and jurisdiction of a court of equity in such cases. However, in the case at bar there was no conflict of judicial authority. The levy and sale did not interfere with the judicial powers attempted to be exercised in the case of Smith v. Whitmore, and in no wise tended to defeat the purpose of the appointment of McCollom.

We cannot agree that the property was in custodia legis at the time of the levy and sale But, on the contrary, we are of the opinion that the interests levied upon and sold were subject to be seized and sold, and that the sale transferred valid title thereto.

There are other questions raised by this appeal, but in view of the conclusions we have reached, no other question need be considered, since the foregoing completely disposes of the appeal.

The judgment of the trial court is therefore reversed, with directions to the trial court to enter judgment in favor of defendants.

HERR, DIFFENDAFFER, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.