Marilyn Gene WHITE, Appellee,

v.

Charles Samuel WHITE, Appellant.

No. 52071.

Supreme Court of Oklahoma.

Feb. 26, 1980.

J. Douglas Gabbard, II, Atoka, for appellee.

Stamper, Otis & Burrage by Michael Burrage, Antlers, for appellant.

DOOLIN, Justice:

In May of 1973, Marilyn Gene White (Wife) filed a divorce petition in Atoka County. Her husband, Charles, filed an entry of appearance and waiver. Later that year on September 11, the trial court, on Wife's motion, dismissed the petition on the basis the couple had reconciled. Within two weeks Wife moved to vacate the dismissal stating they had failed to effect a reconciliation of their differences. The trial court vacated the dismissal and entered the decree of divorce. The decree ordered Husband to pay $100.00 per month support for their two children. No appeal was taken from this order.

Over three years later[1] Wife filed an application for a contempt citation alleging Husband had never paid the child support provided for in the decree and was in arrears of $3,600.00.

Husband filed an appearance pleading to jurisdiction, and a motion to quash in which he claimed since the divorce decree in 1973, he and Wife had established a common-law marriage but that she had subsequently abandoned him. He attached a copy of a petition for divorce he had filed in Johnston County a couple of weeks before Wife sought contempt. Petition stated Wife had obtained a decree of divorce in Atoka County. At the contempt hearing Husband admitted knowledge of the 1973 divorce decree. He testified he knew he was required to pay child support and had seen a copy of the divorce decree. He knew Wife had remarried and had another child. Wife de-

---

1. In the interim Marilyn filed a motion to modify. Record reveals a temporary restraining or-der was issued but record shows no further disposition.

nied she had ever returned to live with Husband or that they had ever held themselves out as husband and wife after the decree. Testimony was directed mainly to evidence of the existence of a common-law marriage. No attack was made on the 1973 decree itself. The trial court overruled Husband's special demurrer and motion to quash and cited Husband for contempt. The court judgment, denominated a "minute," was entered December 16, 1976, and stated in pertinent part:

"After hearing, being advised in the premises and having taken said cause under advisement, the Court finds:

1] That Plaintiff and Defendant were divorced in this Court on the 24th day of September 1973, and Defendant was Ordered to pay child support in the sum of $100.00 per month beginning October 1, 1973.

2] That at the time of trial the Defendant was in arrearage in the sum of $3,600.00.

3] That the facts established are inconsistent with the existence of a common-law marriage as urged by Defendant as a defense to not paying child support payments.

4] That the divorce entered on the 24th day of September 1973, is a valid divorce.

5] That no valid common-law marriage existed between Plaintiff and Defendant.

6] That Plaintiffs' second marriage is a valid marriage.

7] That Charles Samuel White has failed to support his children and he still owes his children certain legal duties.

8] That Charles Samuel White is in contempt of this Court for his failure to make the child support payments as required by the Decree of Divorce entered by this Court on September 24, 1973."

No appeal was taken from this judgment but Husband filed a motion for rehearing on December 21, 1976, claiming for the first time that he was denied due process by the trial court in 1973, because it vacated the dismissal of the divorce petition and entered the decree without notice to him. He did not attack the judgment of no common-law marriage.

On January 11, 1977, the trial court overruled Husband's motion for rehearing and issued a bench warrant for his arrest for contempt. Husband did not appear at this hearing. No appeal was taken and Husband was incarcerated in the Atoka County jail.

On June 17, 1977, Husband filed a timely motion and petition to vacate the order of January 11, overruling his motion for rehearing, on grounds of unavoidable casualty preventing him from arguing that motion. This motion was not heard until February 27, 1978. At that time the trial court denied his motion to vacate the January 11 order. Husband appeals.

In his petition in error filed March 22, 1978, Husband seeks review of all the above orders. However, the appeal must be reviewed only as an appeal from the denial of his motion to vacate the January 11 order.

Husband's December 21, 1976 motion for rehearing was a motion for new trial as defined by 12 O.S.1971 § 651 under either the first or sixth subsection. This motion operated to extend the appeal time until it was overruled January 11, 1977.[2] At that time the thirty day appeal time began to run, but no petition in error was filed.

12 O.S.1971 § 1031 provides:

**2.** 12 O.S.1971 Ch. 15, App. 2, Rule 1.12(c) [since amended, effective January 7, 1980. See 51 OBJ 49] provided:

The filing of a motion for new trial, reconsideration, re-examination, rehearing or to vacate or modify a decision shall *not* operate to extend appeal time when such motion is directed to:

I. An order denying a new trial or modifying or refusing to vacate or modify a judg-

ment on any ground specified in 12 O.S.Supp. 1969 §§ 651 and 655 but a timely motion for new trial directed to an order modifying or refusing to vacate or modify a judgment on any other ground that is enumerated in 12 O.S.1961 § 1031 will extend appeal time.

II. An order granting or denying a postjudgment motion for judgment notwithstanding the verdict.

"The District Court shall have power to vacate or modify its own judgments or orders . . .:

. . . . .

Seventh. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending."

Husband's motion to vacate the January 11 order was based on this subsection and thus timely filed under the two year limitation of 12 O.S.1971 § 1038.

Husband's argument on appeal is not addressed to the reasons the trial court should vacate the January 11 order, i. e. unavoidable casualty preventing him from arguing his motion for new trial. His argument is directed to the issue of the jurisdiction of trial court to vacate the dismissal of the divorce petition in 1973, without notice to him. Wife counters, emphasizing his entry of appearance and waiver specifically waived any requirement of further notice to him.

We do not need to reach this issue. At the December contempt hearing, Husband stated he recognized the divorce decree, had read a copy and knew he was ordered to provide support for his minor children. He admitted he had paid no money into court and made little effort to contribute anything to the support of his children. He had actual notice the divorce action had proceeded to the finish; he was apparently unaware the action had been interrupted at any stage. His defense to the contempt citation was a common-law marriage after the divorce, not lack of notice of the decree.

We can find no reason to allow Husband to defend successfully against a child support obligation on an unappealed procedural defect unattacked for over three years. It is too late for Husband to appeal his lack of appearance at the time the divorce decree was entered.[3] Principles of res judicata apply to questions of jurisdiction as well as other issues.[4]

Trial court's order of February 27, 1978 as for contempt is hereby AFFIRMED.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS and HARGRAVE, JJ., concur.

IRWIN, V. C. J., and OPALA, J., concur in result.

OPALA, Justice, concurring in result:

The issue *sought* to be presented for review is whether the December 16, 1976 contempt of court order for nonsupport rests on a void decree of September 25, 1976. The divorced father [father] no doubt hopes to secure this court's pronouncement holding the contempt order unenforceable because its legal predicate—the divorce decree—is void on the face of the judgment roll.

The procedural posture of this appeal bars the father from the corrective relief he seeks. *He is simply too late for any effective review.*

We need not concern ourselves with the problem of whether the underlying decree is facially void or not. If the September 25, 1976 divorce decree *is not void* on the face of the judgment roll because evidence *dehors* the record proper is in fact necessary to establish the jurisdictional infirmity in its rendition, the three-year limitation period for a direct attack had expired before the father launched it in his "rehearing motion" of December 21, 1976.[1] If, on the other hand, the divorce decree is void on the face of the judgment roll, in that no proof *dehors* the record is needed to establish a fatal jurisdictional defect in it, *no* limitation period would apply,[2] but another principle stands as a barrier to a successful attack.

**3.** See *Pettis v. Johnston*, 78 Okl. 277, 190 P. 681 (1920) and *Scoufos v. Fuller*, 280 P.2d 720 (Okl. 1954), holding a judgment not void on its face may not be attacked after three (3) years.

**4.** *Consolidated Motor Freight Terminal v. Vineyard*, 193 Okl. 388, 143 P.2d 610, 614 (1943); *Bruce v. Miller*, 360 P.2d 508 (Okl.1961).

**1.** *Scoufos v. Fuller*, Okl., 280 P.2d 720 [1955].

**2.** 12 O.S.1971 § 1038 provides that "[a] *void judgment may be vacated at any time* . . ." [emphasis supplied].

A facially void judgment may not be successively attacked, either directly or collaterally. The aggrieved litigant is allowed but a single "whack" at any facially void target.[3] The father had that whack at it when he launched the attack by his "rehearing motion" of December 21, 1976 and met with the trial court's adverse order of January 11, 1977. An appeal should have been brought directly from that order of denial. Absent such appeal the ruling implicit in the denial—that the judgment is not facially void—is now res judicata.[4] Its res judicata effect cannot be avoided without showing here that a tenable legal ground within the meaning of 12 O.S.1971 § 1031 subdiv. 7 did actually exist for setting aside the denial on father's June 17, 1977 vacation motion. That showing has not been made here.[5]

In summary, the appellant-father—too late here for any effective relief—stands before us in a veritable procedural straitjacket. His appeal fails. He is unable to show error in the trial court's February 17, 1978 order refusing to vacate the January 11, 1977 denial of his rehearing motion. This is so because there is here no record of any "unavoidable casualty or misfortune" sufficient to make the January 11, 1977 denial legally vulnerable to attack and vacation. The denial must be allowed to stand. It operates to bar relitigation of the attack on the grounds that the decree is facially void.

I am authorized to state that IRWIN, V. C. J., concurs in these views.

---

3. *Bruce v. Miller*, Okl., 360 P.2d 508 [1961]; *Brett v. Fielder et al.*, 136 Okl. 222, 277 P. 216, 217 [1929]; syllabus 4 in *Tippins v. Turben*, 162 Okl. 136, 19 P.2d 605, 608 [1933].

4. The doctrine of res judicata operates to bar successive jurisdictional attacks on the same grounds. *Brett v. Fielder*, supra note 3; *Tippins v. Turben*, supra note 3; *Consolidated Motor Freight Terminal v. Vineyard*, 193 Okl. 388, 143 P.2d 610, 614 [1943].

5. Father did not demonstrate any grounds for relief under subdiv. 7, 12 O.S.1971 § 1031. It would take father's proof of "unavoidable casualty or misfortune" that kept him from effective appearance in court on January 11, 1977 for him to succeed in having the January 11 order vacated. There is no requisite showing in this record.