2001 OK 87

**Shawna K. READ, Plaintiff–Appellee/Counter–Appellant,**

v.

**Michael Ray READ, Defendant–Appellant/Counter–Appellee.**

No. 92,930.

Supreme Court of Oklahoma.

Oct. 16, 2001.

As Amended Feb. 11, 2002.

Rehearing Denied Feb. 11, 2002.

Shannon Davis, Law Office of Shannon Davis, Tulsa, OK, for Plaintiff–Appellee/Counter–Appellant.

David H. Sanders, Sanders & Sanders, Tulsa, OK, for Defendant, Appellant/Counter–Appellee.

OPALA, J.

¶ 1 The dispositive issues[1] tendered for corrective relief on certiorari are (1) whether an earlier pronouncement by the Court of Civil Appeals in this case,[2] which affirmed the trial court's denial of former husband's motion to vacate the parties' divorce decree, operates in a post-decree con-

---

**1.** Read also seeks review of the trial court's denial of his request to undergo a paternity test and its rulings on a series of motions *in limine*. Because the Court of Civil Appeals found the jurisdictional issue dispositive, it did not address these contentions. When this court vacates the opinion of the Court of Civil Appeals, it may address any issue properly preserved and briefed in the appeal. Rule 1.180, Oklahoma Supreme Court Rules, 12 O.S. Supp.1999, Ch. 15, App. 1. Today's pronouncement that Read is barred from attacking the validity of the divorce decree renders a paternity test irrelevant. As for the motions *in limine*, Read's brief fails to specify with citation to authority why any particular one of the court's rulings was erroneous. Where an assignment of error lacks any citation of authori-

ty, it need not be considered. *S.W. v. Duncan*, 2001 OK 39, ¶ 31, 24 P.3d 846, 857; *Mills v. Grotheer*, 1998 OK 33, ¶ 15, 957 P.2d 540, 544. Instead, Read argues generally that the error was in the cumulative effect of the court's rulings, which was to deprive him of any defenses. This contention is without merit. Read cites no authority, and we are aware of none that requires a trial court to admit evidence which is otherwise inadmissible solely to provide a litigant a claim or defense to be presented at trial.

**2.** *Shawna K. Read v. Michael Ray Read*, Sup.Ct. No. 89,225 (an unpublished opinion by the Court of Civil Appeals, Div. III, decided 10 February 1998).

tempt proceeding to bar relitigation of alleged jurisdictional defects in that decree, and (2) whether Read's constitutional protection against double jeopardy was violated by the proceedings to hold him in contempt a second time. We answer the first question in the affirmative and the second in the negative.

## I

## ANATOMY OF LITIGATION

¶ 2 Shawna K. Read, now Shawna K. Dunn (Dunn), and Michael Ray Read (Read) were married on 16 May 1987 in Tulsa, Oklahoma. On or about 1 December 1987, a child was born of their marriage. Approximately seven months later, Read departed from the state of Oklahoma, leaving behind his wife and child who were not informed of his whereabouts.

¶ 3 On 26 February 1990, Dunn filed a petition for divorce in which she sought approval of service upon Read by publication. Although Dunn stated in the petition that she had a last known Oklahoma address for Read, she also alleged that she had had no contact with him since June 1988 and was unable to determine his whereabouts despite the exercise of due diligence. A hearing on the divorce petition was held on 30 April 1990. Read did not appear and Dunn was granted a default judgment. The decree recites that Dunn had timely but unsuccessfully attempted service of summons on Read and that service by publication was authorized and proper. Read was ordered to pay child support in the amount of $403.20 per month.

¶ 4 Over the next *six and one-half years* Read neither challenged the divorce decree nor complied with its order to pay child support. On 6 December 1996 Dunn filed her first application for contempt (first con-

tempt). Read responded by filing a petition to vacate the divorce decree—the legal predicate for the child support order—alleging lack of personal jurisdiction over him in the divorce proceeding. Read's motion was denied and he appealed. The Court of Civil Appeals, Division III, affirmed and this court denied certiorari.[3]

¶ 5 While Read's appeal from the vacation quest's denial was pending, a non-jury trial was held on Dunn's contempt application. The trial court withheld a decision on the issue of contempt, but did commute the accrued unpaid child support to judgment (for the period from the date of the divorce decree through 28 April 1997 in the amount of $32,659.20 plus interest).

¶ 6 On 8 December 1998, the trial court finally reconvened to decide whether Read should be held in contempt.[4] After hearing evidence and argument, the trial court found Read guilty and sentenced him to six (6) months in the Tulsa County Jail, subject to purge by the payment of $3,000.00.[5] Read paid the purge fee and was not jailed. Dunn moved the trial court to reconsider the terms of the purge fee. Her motion was denied and Dunn counter-appealed.

¶ 7 As of mid-December 1998, Read had paid none of the commuted child-support arrearage other than the $3,000 purge fee, nor had he paid any further monthly child support. On 18 December 1998, Dunn filed a second contempt application (second contempt) covering *all* unpaid child support, including that which had been at issue in the first contempt proceeding. In response to Read's argument that this constituted double jeopardy, the trial court ordered Dunn to amend her application to cover only unpaid child support not covered by the first contempt order.

---

3. *Shawna K. Read v. Michael Ray Read, supra* note 2, *cert. denied,* 15 June 1998.

4. The hearing, which had begun on 25 April 1997, was continued for twenty months—until 8 December 1998—pending the outcome of certain other proceedings brought by Read to challenge the nisi prius court's power to hold him in contempt.

5. By statute and court rule, contempt may be purged and incarceration avoided by (1) making

all future child support and child-support-related payments and (2) paying the full amount of any child support arrearage, or some portion of the arrearage, in a lump sum, if possible, and (3) making monthly payments on the remaining arrearage if the full amount of the arrearage is not paid in a lump sum. *See* 21 O.S.1991 § 566 and Rule 8.3, Rules for the District Courts of Oklahoma, 12 O.S.1991, ch.2, App.

¶ 8 On the day set for jury trial, Read filed another motion to dismiss the proceeding, which in addition to again raising the double jeopardy issue, also challenged the facial validity of the divorce decree on a new jurisdictional ground: lack of judicial power to impose the particular child support obligation incorporated in the divorce decree.[6] Read based this challenge on the fact that the divorce decree granted Dunn $403.20 per month in child support when the divorce petition had requested only $180.00 per month. The trial court rejected Read's double jeopardy defense insofar as it related to his failure to pay child support after the period of time covered by the first contempt order,[7] but the record reflects no ruling upon Read's new jurisdictional ground of attack upon the divorce proceeding. Instead, the trial court ruled generally that it would not entertain any attack upon the validity of the divorce decree.[8]

¶ 9 A jury trial was then held on the second contempt application and Read was found guilty of nonsupport (for the period from 25 April 1997 through 31 January 1999). He was sentenced to six (6) months in the Tulsa County Jail, with the contempt subject to purge by the payment of $9,200.00. Un-

able to pay the purge fee, Read was incarcerated. A petition to this court for a writ of habeas corpus was denied.[9] On 7 July 1999, the child support arrearage was commuted to judgment (in the amount of $59,412.28 through March 1999).

¶ 10 Read appealed from this second order of contempt, urging among other errors the trial court's refusal to dismiss the contempt application based upon the alleged jurisdictional defects in the divorce decree.[10] He later amended his petition in error three times in order to also seek review of (1) the attorney's fee and costs awarded to Dunn in connection with the first contempt proceeding, (2) the attorney's fee and costs awarded to Dunn in connection with the second contempt proceeding, and (3) the judgment for child support arrearage entered against him in the second contempt proceeding for unpaid child support plus interest through March 1999.[11]

¶ 11 The Court of Civil Appeals, Division Four, agreed with Read, holding that "the divorce decree was unenforceable as to child support in either contempt proceeding because the decree-based child support was entered without personal jurisdiction over

---

6. "[T]he jurisdiction necessary to empower a court to render a valid judgment is of three types: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject matter; and (3) jurisdiction of the particular matter which the judgment professes to decide." *La Bellman v. Gleason & Sanders, Inc.*, 1966 OK 183, ¶ 8, 418 P.2d 949, 953.

7. The trial court reserved a ruling on the double jeopardy defense insofar as it related to nonpayment of child support for the period of time already covered by the judgment in the first contempt proceeding—from the date of the divorce decree through 28 April 1997. The record does not reflect that the court ever issued a ruling on that matter, but its contempt order did not cover the earlier period of nonpayment.

8. This ruling came in the context of a pre-trial argument on a motion by Read to stay the proceedings for five days to allow him to apply for a writ of prohibition. That motion was denied.

9. This court's order of 14 April 1999 denying the writ succinctly states:

"The judgment which stands as a bar to the petitioner's plea for relief in this court is not the 1990 divorce decree, facially void or valid, but the subsequent ruling on his 1997 petition to vacate, which declined to set aside the 1990 divorce decree, which was affirmed on appeal in cause no. 89,225 and was left undisturbed by this court's vote on certiorari."

10. The parties' appeals were consolidated by this court's 12 May 1999 order.

11. A post-decree contempt proceeding for unpaid child support culminates in a single order made up of the finding of contempt, a sentence of incarceration subject to purge, and a commutation of the unpaid child support to judgment. That single order stands or falls as a unit. Today's pronouncement that Read is barred from the corrective relief he seeks applies as much to the "arrearage judgment" as to the finding and sentence of contempt. The apparent overlapping of the two "arrearage judgments" in this case, in which the commutation granted in the second contempt proceeding *includes within it* unpaid child support already commuted to judgment in the first contempt proceeding, is not an error amenable to corrective relief in this appeal. Of course, Dunn may not obtain a double recovery. Read is entitled in a proper post-decree proceeding to a credit toward one "arrearage judgment" for any amounts paid on the other.

[Read]." Accordingly, COCA vacated the divorce decree's determination of paternity and its order to pay child support as well as the various other judgments and orders tendered by Read for review. It then remanded the cause to the trial court to permit Read to be heard on the merits of any issue bearing on his liability for child support. COCA declined to decide Dunn's counter-appeal pending post-remand adjudication of Read's liability for child support.

¶ 12 We granted certiorari on Dunn's petition and now vacate COCA's opinion, affirm the orders tendered by Read for review, and remand the cause to COCA for a determination of Dunn's counter-appeal.

## II

## ALLEGED ERRORS IN THE DIVORCE PROCEEDING ARE NO LONGER AMENABLE TO CORRECTIVE RELIEF

■ ¶ 13 Read contends that the child support obligation—for nonpayment of which he has been twice held in contempt—is unenforceable because the divorce decree upon which it is predicated is void on the face of the judgment roll. Even if Read were correct, the procedural posture of this appeal bars him from obtaining the corrective relief he seeks.

¶ 14 We need not inquire into whether the divorce decree is or is not facially void. If it is facially valid because evidence *dehors* the judgment roll is necessary to establish the jurisdictional defect in its rendition, a direct attack upon it is now barred by the three-year limitation period applicable to statutory vacation proceedings.[12] If, on the other hand, the divorce decree is void on the face of the record proper,[13] as Read urges, an attack upon it is not barred *by any limitations period.* As Read correctly points out, the terms of 12 O.S. Supp.1993 § 1038 provide that a facially void judgment may be vacated at any time.[14] *This does not mean, as Read would have us hold, that a facially void judgment may be subjected to successive attacks, direct or collateral.*[15] Rather, § 1038 merely provides that the *passage of time* does not operate to bar a quest to vacate a facially void judgment.

■ ¶ 15 The law affords no more than *a single opportunity* to litigate a disputed

---

12. The provisions of 12 O.S.1991 § 2004 (C)(3)(f) state:
    "A party against whom a default judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three (3) years after the filing of the judgment or order, have the judgment or order set aside in the manner prescribed in Sections 1031.1 and 1033 of this title...."
    *See Pettis v. Johnston,* 1920 OK 224, 190 P. 681, 688 and *Scoufos v. Fuller,* 1954 OK 363, ¶ 33, 280 P.2d 720, 723, holding that a judgment valid on its face may not be attacked after the passage of three (3) years. Read did not attack the 30 April 1990 divorce decree until 1997, at which time he was limited to attacking the decree on the grounds of facial invalidity under the provisions of 12 O.S. Supp.1993 § 1038. *See infra* note 15 for the pertinent provisions of § 1038.

13. The record proper or judgment roll consists of "the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; ..." 12 O.S.1991 § 32.1; *Elliott v. Guthrie,* 1986 OK 59, ¶ 7, n. 8, 725 P.2d 861, 863, n. 8; *Mayhue v. Mayhue,* 1985 OK 68, ¶ 8, n. 17, 706 P.2d 890, 895, n. 17.

14. The pertinent provisions of 12 O.S. Supp.1993 § 1038 state: "A void judgment, decree or order may be vacated at any time on motion of a party, or any person affected thereby."

15. *Corliss v. Davidson & Case Lumber Co.,* 1938 OK 475, ¶ 8, 84 P.2d 7, 9 ("The plaintiff emphasizes the oft-repeated assertion that a void judgment may be vacated at any time, and that it is always subject to attack. But that principle does not mean that the question whether a judgment is void may repeatedly be litigated by the parties. The principles of 'another action pending' and res judicata are still applicable to actions adjudicating whether or not the judgment is void. In other words, granting that a void judgment is subject to attack at any time, if parties litigate that very question (that is, whether it is void or should be voided), then the question is settled and it is no more the subject of repeated and vexatious suits between the same parties than is any other disputed question of fact or law. If this were not the case, then there would be no end to actions between the same parties to determine the validity of a former judgment."). *See also Bruce v. Miller,* 1960 OK 266, ¶ 24, 360 P.2d 508, 512; *Brett v. Fielder,* 1928 OK 348, ¶ 7, 277 P. 216, 217–18; *Brooks v. Baltz,* 2000 OK 73, ¶ 8, 12 P.3d 467, 469 ("'[A] District Court determination of a jurisdictional issue [supports] a plea of res judicata.").

question of a tribunal's jurisdiction.[16] This "whack" at the divorce decree was taken by Read in his unsuccessful effort to vacate that judgment in 1996.[17] Read appealed from that adverse decision and the Court of Civil Appeals, Division Three, affirmed. This court denied certiorari and, although the case raised a federal constitutional issue, Read did not seek review by the United States Supreme Court. The trial court's order denying Read's petition to vacate now stands as a complete bar to further attack upon the divorce decree under the doctrine of res judicata[18] as well as that of settled law of the case.[19] The divorce decree's validity is no longer subject to relitigation in the trial court nor is it amenable to review on appeal or certiorari.

¶ 16 The procedural straitjacket in which Read finds himself with respect to corrective relief from the divorce decree for lack of personal jurisdiction likewise bars him from challenging the decree for lack of the third element of jurisdiction—judicial power to render the particular decision. The doctrine of res judicata bars relitigation not only of those issues raised and decided but also of those issues which could have been raised and were not.[20] Res judicata applies to questions of jurisdiction.[21] Moreover, an appellate court's decision settles not only all questions actually tendered for review but also all questions existing in the record and involved in the decision by implication.[22] Read did not raise the judicial-power aspect

16. A litigant who is deemed aggrieved by a jurisdictionally defective decision is allowed but a single "whack" (attack) at any facially void target. *Stites v. DUIT Constr. Co.*, 1995 OK 69, ¶ 10, n. 13, 903 P.2d 293, 298, n. 13; *Salyer v. Nat'l. Trailer Convoy, Inc.*, 1986 OK 70, ¶ 4, 727 P.2d 1361, 1363; *Depuy v. Hoeme*, 1989 OK 42, ¶ 15, 775 P.2d 1339, 1345; *White v. White*, 1980 OK 31, ¶ 3, 607 P.2d 700, 703 (Opala, J., concurring in result); *Bruce, supra* note 16 at 511–512; *Brett v. Fielder, supra* note 16 at 217.

17. A judgment is entitled to preclusive effect only if the party against whom it is interposed has had a full and fair opportunity to litigate the claim or critical issue. *Nealis v. Baird*, 1999 OK 98, ¶ 51, 996 P.2d 438, 458; *Veiser v. Armstrong*, 1984 OK 61, ¶ 16, n.21, 688 P.2d 796, 802, n.21. That opportunity must be afforded in order to meet the minimum standards of due process, both state and federal. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 41, 987 P.2d 1185, 1201. Despite Read's insistence to the contrary, he was given a full and fair opportunity to litigate the jurisdictional issue. It was made available to him by the vacation proceeding, in which he fully participated. The order that denied his motion to vacate the divorce decree—and not that decree itself—stands entitled to preclusive effect.

18. *White v. White, supra* note 17, at ¶ 12, at 702 ("Principles of res judicata apply to questions of jurisdiction as well as other issues."); *Corliss v. Davidson & Case Lumber Co., supra* note 16, at ¶ 8, at 9; *Brett v. Fielder, supra* note 16, at ¶ 7, at 217–18. In its broadest sense, the term res judicata encompasses four types of preclusion: bar, merger, collateral estoppel, and direct estoppel. *Moch v. East Baton Rouge Parish School Board*, 548 F.2d 594, 596 (5th Cir.1977). Hence, the use of the term res judicata without an explanatory aside is potentially confusing. Accordingly, the American Law Institute has replaced it with the more accurate and precise terms—claim preclusion and issue preclusion. RESTATEMENT OF JUDGMENTS (SECOND) § 74; *Allen v. McCurry*, 449 U.S. 90, 94, n. 5, 101 S.Ct. 411, 415, n. 5, 66 L.Ed.2d 308 (1980); *Underside v. Lathrop*, 1982 OK 57, ¶ 6, n. 8, 645 P.2d 514, 517, n. 8. The new terminology has been gaining acceptance and is increasingly used in modern decisions in place of the older terms. The principle of res judicata as claim preclusion teaches that a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 7, 979 P.2d 252, 255–56; *Miller v. Miller*, 1998 OK 24, ¶ 23, 956 P.2d 887, 896; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 12, 946 P.2d 662, 667; *Veiser v. Armstrong*, 1984 OK 61, ¶ 8, n. 9, 688 P.2d 796, 800 n. 9.

19. The settled-law-of-the-case doctrine operates to bar relitigation of issues that have been settled by an earlier appellate opinion in that case. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶ 11, n. 27, 796 P.2d 276, 283, n. 27; *Mobbs v. City of Lehigh*, 1982 OK 149, ¶ 6, n. 5, 655 P.2d 547, 549, n. 5; *Mullins v. Ward*, 1985 OK 109, ¶ 13, n. 13, 712 P.2d 55, 61, n. 13.

20. *Panama Processes, S.A. v. Cities Service Co., supra* note 19 at ¶ 39, at 291 ("[R]es judicata in the Anglo–American sense bars not only the defensive theories actually interposed [in an earlier action], but any defenses that could have been raised in that action.[citations omitted]").

21. *White v. White, supra* note 17 at ¶ 12, at 702; *Consolidated Motor Freight Terminal v. Vineyard*, 1943 OK 358, ¶ 19, 143 P.2d 610, 614.

22. *Handy v. City of Lawton*, 1992 OK 111, ¶ 13, 835 P.2d 870, 873.

of jurisdiction when he sought to vacate the divorce decree. The trial court's denial of the vacation quest reflected its view that the divorce decree *in toto* complied with due process. The appellate decision affirming the trial court did likewise. The divorce decree may no longer be challenged on this jurisdictional basis any more than it may be challenged for lack of personal jurisdiction.

¶ 17 Were we nevertheless to entertain Read's argument that the trial court in the divorce proceeding did not have the judicial power to impose the particular child support obligation set forth in the decree, Read still would not prevail. He argues that jurisdiction to enter the particular order was absent because (1) the decree's requirement that Read pay $403.20 per month when Dunn had asked for only $180.00 per month went beyond the issue presented to the trial court for determination, and (2) the divorce petition failed to comply with the provisions of 12 O.S.1991 § 2004(C)(3)(c)(1),[23] which require that when the recovery of money is sought, notice given by publication must state the total amount sought to be recovered.

¶ 18 Read is wrong on both counts. By force of statute, child support— its award and amount—is always within the issues framed by a divorce petition where the parties have minor children.[24] The appropriate amount of support is left to the sound judicial discretion of the trial judge. That discretion cannot be abridged by external restraints such as an agreement between the parties.[25] Similarly, the trial court's discretion is not limited by the amount of child support requested in a divorce petition's prayer for relief.[26] If the trial court erred in the amount of child support due from Read, the error was one of law, not of jurisdiction, which should have been raised on appeal or in a vacation proceeding brought within the three (3) year limitation period. *LaBellman v. Gleason & Sanders, Inc.,*[27] cited by Read, has no bearing upon the jurisdiction of the trial court to award child support in a divorce proceeding.

¶ 19 Read's contention that the notice in the divorce proceeding failed to comply with statutory requirements is also without merit. A divorce proceeding in which child support is an issue is not a common-law action for the recovery of money. Hence, the notice requirement of 12 O.S.1991 § 2004(C)(3)(c)(1) is not a jurisdictional prerequisite for a valid child support order.

¶ 20 Read cites *Bailey v. Campbell,*[28] *Southwestern Surety Insurance Co. v. Far-*

---

23. That statute provides in pertinent part: "When the recovery of money is sought, it is not necessary for the publication notice to state the separate items involved, but the total amount that is claimed must be stated."

24. The authority of the trial court to impose child support is set out in the provisions of 43 O.S. 1991 § 112, which state:

   "A petition or cross-petition for a divorce, legal separation, or annulment must state whether or not the parties have minor children of the marriage. If there are minor children of the marriage, the court:
   1. Shall make provision for guardianship, custody, medical care, support and education of the children; ..."

25. *Ahrens v. Ahrens,* 1917 OK 619, 169 P. 486, 487 (a married woman cannot, by a separate contract, relieve her husband of the obligation to support his minor children); *State Dept. of Human Services ex rel. K.A.G. v. T.D.G.,* 1993 OK 126, ¶ 9, 861 P.2d 990, 994 (an unwed mother may not, through settlement agreement, relieve a putative father of his obligation to support his minor child); *Parkey v. Parkey,* 1962 OK 110, ¶ 18, 371 P.2d 711, 714.

26. *Donahoe v. Alcorn,* 1940 OK 348, ¶ 13, 108 P.2d 786, 788 ("In view of the statutory duty imposed on the court to provide for the support of minor children and the previous decisions of this court recognizing the analogous power of the court to award alimony against a defaulting defendant in granting a divorce, even though specific request for such relief has not been included in the petition, *we conclude, and hold, that the court may, at the time of granting a divorce against a defaulting defendant, enter judgment providing for the support of minor children, even though the relief thus granted is not pursuant to or in accord with a specific prayer of the petition.* (emphasis added) The defaulting defendant is presumed to be cognizant of the duty imposed by law upon the court in this respect.").

27. 1966 OK 183, 418 P.2d 949. In *La Bellman,* the trial court entered a judgment foreclosing upon property other than that described in the petition and the court held that the trial court had exceeded its jurisdiction in doing so.

28. 1991 OK 67, 862 P.2d 461.

*riss,*[29] and *Hinkle v. Jones*[30] in support of his contention that the law sanctions successive attacks upon a facially void judgment. *Bailey* is easily distinguishable. In that case, we held that a trial court *does not have the judicial power after an automatic stay has issued to entertain a bankruptcy debtor's vacation motion.* Hence, an order denying such a motion is void on its face—a nullity—and does not operate to bar a bankruptcy trustee's subsequent attack on the default judgment. In the instant case, the trial court had the judicial power to enter its order denying Read's motion to vacate and *that order* properly stands as a bar to a subsequent attack on the divorce decree.

¶ 21 *Southwestern Surety*[31] and *Hinkle,*[32] which appear to support Read's proposition that successive motions to vacate a facially void judgment or order are authorized by 12

**29.** 1926 OK 103, 247 P. 392.

**30.** 1937 OK 190, 66 P.2d 1073.

**31.** In *Southwestern Surety v. Farriss, supra* note 29, the district court granted Southwestern Surety a lien by subrogation on allotments of five Indian children despite the fact that federal law specifically prohibited any court other than a probate court from alienating the allotments of Indian minors. Seven years later, when two of the minors reached adulthood, they petitioned the district court to vacate the decree on the grounds that it was outside the issues raised by the pleadings and was void for lack of power in the district court to render it. Their petition to vacate was denied and no appeal was lodged. Southwestern Surety filed an action to enforce its lien. The trial court denied foreclosure and Southwestern Surety appealed. The court held that the denial of the motion to vacate the original decree did not bar the Indian landowners from raising the issue of jurisdiction again in the foreclosure action as a defense against enforcement of the original decree.

**32.** In *Hinkle v. Jones, supra* note 30, a mortgagee filed an action to foreclose a real estate mortgage against three defendants. Two of the defendants were the former owners of the land who were personally liable for the mortgage debt and the plaintiff sought a personal judgment against them. The third defendant (Keahey) was the grantee of the two original owners. Keahey had no personal liability on debt and the plaintiff did not ask for a money judgment against him. Nevertheless, the trial court entered a personal judgment against Keahey. At the next term of court, Keahey moved to vacate the judgment. None of the grounds alleged was jurisdictional. That mo-

O.S. Supp.1993 § 1038, can only be viewed as aberrational in light of more recent Oklahoma jurisprudence that clearly prohibits successive attacks on a facially void judgment. To the extent that those cases deviate from the rule recently stated in *White v. White*[33] and similar cases, they have been implicitly overruled and are now explicitly disapproved.

## III

## READ WAS NOT PLACED IN DOUBLE JEOPARDY BY THE SECOND CONTEMPT PROCEEDING

¶ 22 Read argues that his constitutional protection against double jeopardy, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitu-

tion was denied. Apparently, no appeal was filed. The land was sold and the deficiency judgment was assigned to Hinkle. Execution was issued against Keahey and he moved to quash the execution on the grounds that the original judgment had been entered without notice while an answer was on file and that the original money judgment and the deficiency judgment were both void insofar as they rendered a personal money judgment against him. He asked that both the original and deficiency judgments be vacated. This motion was also denied and no appeal was lodged. When an order for a hearing on assets was issued, Keahey filed a third motion to vacate on the grounds that the judgment was void on its face and the court lacked jurisdiction to render it because it was outside the issues formed by the pleadings. This motion was granted. Hinkle appealed, arguing that the court erred in granting the motion to vacate because previous motions to vacate had been denied and not appealed. Keahey, they argued, was barred from attacking the judgment again. The Oklahoma Supreme Court disagreed, stating,

"This proposition is in the nature of the plea of res adjudicata, which, in view of the prior decisions of this court, would not and could not be good, as the court holds that this is a judgment void on its face, and the fact that the defendant Keahey did not appeal from the orders overruling prior motions to vacate did not affect his rights to file subsequent motions for the reason, as set out in the statute, that a void judgment may be attacked at any time by a party affected thereby." *Id.* at ¶ 28, at 1076–77.

**33.** *White v. White, supra* note 17.

tion, has been violated because he was tried and sentenced in the second contempt proceeding for the same "offense" for which he had already been tried and sentenced in the first contempt proceeding.[34] The double jeopardy proscription affords protection from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense.[35] Assuming arguendo that the double jeopardy guarantee applies to a civil contempt proceeding,[36] our examination of the record reveals nothing that would establish a violation of any of the three prongs of that guarantee. The two contempt orders address the nonpayment of child support during almost completely distinct and separate periods of time. The first contempt order covered the period from 30 April 1990 through 30 April 1997; the second covered the period from 25 April 1997 through 31 January 1999. Any overlap between the two orders is *de minimus* and does not implicate the double jeopardy guarantee.[37]

**34.** The Double Jeopardy Clause of the Fifth Amendment, U.S. Const., provides in pertinent part: "No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb; ..." The protections of the Fifth Amendment are made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984). The state counterpart to the Fifth Amendment offers identical protection. *See* the terms of Art. 2, § 21, Okla. Const., which provide in pertinent part that "No person ... after having been once acquitted by a jury, [shall] be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

**35.** *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *(overruled on other grounds); Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *Johnson v. State,* 1980 OK CR 45, ¶ 15, 611 P.2d 1137, 1141; *Marutzky v. State,* 1973 OK CR 398, ¶ 6, 514 P.2d 430, 431.

**36.** Because we base our holding regarding Read's double jeopardy argument upon the absence of any significant record evidence of overlap between the two contempt orders, we need not address what might otherwise be the thresh-

## IV

### THE CAUSE SHOULD BE REMANDED TO THE COURT OF CIVIL APPEALS FOR CONSIDERATION OF THE ISSUE RAISED IN DUNN'S COUNTER–APPEAL

¶ 23 Dunn also filed a counter-appeal in this case for review of the order setting the purge fee in the first contempt proceeding. Although the order finding Read guilty in the first contempt proceeding was not among the orders for which Read sought corrective relief, COCA nevertheless vacated that order. Because of that decision, COCA declined to review whether the purge fee was proper. It held that corrective relief is unavailable until the issue of Read's paternity and liability for child support shall have been determined. Today's pronouncement vacating COCA's opinion restores the issue raised by Dunn's counter-appeal. When this court vacates the opinion of the Court of Civil Appeals, it may address any issue properly raised in the appeal or remand the cause to the Court of Civil Appeals for that court to address that issue.[38] Whether the trial court

old question of whether the double jeopardy guarantee applies to a civil contempt proceeding.

**37.** If the child support obligation is viewed as accruing each month on a daily basis, then there would in fact be a five day overlap between the two orders. In light of the substantial, non-overlapping periods of time covered by the two orders, we view this five-day overlap as insufficient to raise double-jeopardy concerns. The second contempt order unmistakably rests upon many months during which Read did not pay child support, for which he was not held in contempt the first contempt proceeding.

**38.** *Boren v. Thompson & Associates,* 2000 OK 3, ¶ 26, 999 P.2d 438, 448; *Beets v. Metropolitan Life Ins. Co.,* 1999 OK 15, ¶ 4, 995 P.2d 1071, 1078 (Opala, J., dissenting). The provisions of Rule 1.180(b), Rules of the Supreme Court, 12 O.S. Supp.1999 Ch. 15, App. 1 state:

"Issues not presented in the petition for certiorari may not be considered by the Supreme Court. Provided, however, if the Court of Civil Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Civil Appeals—address such undecided matters or it may remand the cause to the Court of Civil Appeals for that Court to address such issues. The case will then be decided on the reviewable issue or issues presented in the briefs theretofore filed, unless for good cause

erred in setting the purge fee should be reviewed in the first instance by the Court of Civil Appeals. We hence remand the cause to that court to address this issue.

## V

### SUMMARY

¶ 24 Read seeks our pronouncement that decree-imposed child support cannot be enforced against him by means of contempt because the child-support obligation's legal predicate—the parties' divorce decree—is void on the face of the judgment roll. This precise issue has previously been determined against Read and he is forever barred from seeking corrective relief on this basis. His contention that the proceedings below placed him in double jeopardy is likewise legally unsupportable. The cause is remanded for COCA's disposition of Dunn's counter-appeal for review of the purge fee set in the first contempt proceeding.

¶ 25 THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE NISI PRIUS ORDERS TENDERED BY FORMER HUSBAND FOR REVIEW ARE AFFIRMED, AND THE CAUSE IS REMANDED TO THE COURT OF CIVIL APPEALS WITH INSTRUCTIONS TO ADDRESS THE ISSUE RAISED IN FORMER WIFE'S COUNTER–APPEAL.

¶ 26 HARGRAVE, C.J., and HODGES, LAVENDER, OPALA, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur;

¶ 27 WATT, V.C.J., dissents;

¶ 28 KAUGER, J., concurs in part and dissents in part.

the filing of additional briefs be then allowed. The Supreme Court may—should it vacate the opinion of the Court of Civil Appeals—address

any issue properly raised in the appeal or on certiorari. *Hough v. Leonard,* 1993 OK 112, 867 P.2d 438 (Okla.1993)."